JOHN D. WRIGHT vs. MARGARET T. WRIGHT — Appeal from Victoria County.

In a suit brought by the wife for a divorce, she is entitled to an injunction to restrain her husband from selling or incumbering the community property in any manner whatever, *pendente lite.*

The provisions of the statute exempting defendants in suits for divorce from answering on oath; and rendering the admissions of the parties incompetent as proof, have reference only to the main object of the suit — the dissolution of the marriage. They do not apply to such statements in the pleadings as relate to the property of the parties, and upon which the restraining order of the court is to be grounded. These must be verified by the affidavit of the party.

Applications for alimony should be sustained by the oath of the party, or evidence *aliunde.* Without this the court cannot act advisedly in determining the amount which the husband should contribute for the support of the wife.

In suits for divorce, the acts complained of must be specifically stated, as to the time, place and *material* circumstances. General charges of cruelty, adultery, excesses, etc., are not sufficient to sustain the action.

The terms "excesses, cruel treatment, and outrages" employed in the statute are conclusions from facts. The acts which constitute them must be stated, that the court may judge whether in legal contemplation they amount to the offenses which authorize a divorce. [*Ante,* 79; 6 Tex. 3; 7 Tex. 3, 538; 10 Tex. 359.]

An explicit statement of the facts upon which the plaintiff relies to sustain the charge is also necessary, to enable the defendant to come prepared for his defense. Proof should not be received to sustain more general charges, without specifications.

The duty of the jury in suits of this character is only to ascertain the truth or falsehood of the allegations contained in the petition. The court must determine whether the matters charged and established are sufficient in law to authorize a divorce.

A demurrer to a plea of justification, aspersing the general character of the plaintiff, without stating particular acts of bad conduct, does not admit the truth of the charge. It is only saying that the plea is impertinent, and that the law does not require any answer to it.

A wife may properly sue in her own name for a divorce, without the intervention of a *prochein ami.* She may also do so whenever it becomes necessary for her to demand the protection of the courts, adversely to her husband, or for the preservation of her property.

The facts of this case are generally stated in the opinion of the court. There is an assignment of errors spoken of in the opinion, consisting of eleven distinct grounds of error urged against the judgment, but as it is not found among the papers of the cause, the reporters are unable to give it here. The arguments of the counsel appear to have been based upon that assignment of errors, but without stating the several grounds in their order, or in the language in which they were presented.

MITCHELL for appellant.

One of the errors assigned is, that the suit is brought by a *feme covert*, in her own name, without the intervention of a *prochein ami*. This alone is sufficient to require the court to dismiss the cause. [2 Howard's R. 753; 2 Story's Eq. 651; Cooper's Eq. Pl. 163; 2 Hill (S. C.) R. 26.]

The order for alimony was granted upon the allegations of the petition unsupported by the affidavit of the party or testimony *aliunde*. This was error. [Laws of Texas 1841, p. 21, sec. 8; 1 Texas R. 58, 481; 1 McCord Ch. 197.]

It was error in the judge to refuse to set aside the order for alimony when the motion was made at the ensuing term of the court, upon the ground that the order was improvidently made upon the allegations of the petition, unsupported by affidavit or other evidence; and which allegations, if sustained, present no case authorizing it. [2 Howard, 753.]

The petition does not state such facts, *explicitly averred*, as show that it was "insupportable" for the parties to live together as husband and wife. It is essential that the facts should be so stated: 1st, to control the testimony; and 2d, to apprise the defendant of the nature of the charges to be exhibited against him by the testimony. [2 How. R. 753; Texas Laws, 1841, p. 21; and Texas Reports cited above.]

The injunction was erroneously granted because the petition alleges no fact authorizing it. It does not aver that the property was in imminent danger of being destroyed or so disposed of that the petitioner's judgment, when obtained, would be fruitless. It was injurious and oppressive to the defendant, because it prevented him from disposing of property at pri-

vate sale, to enable him to comply with the order for alimony, and forced him to submit to the sacrifice of sales made quarterly, under *fi. fa.* in default of the payment of the alimony. The injunction, having been improvidently granted, it ought to have been dissolved on motion.

There is no sufficient ground alleged in the petition either for a divorce or alimony, nor does the proof show a proper case for either. "A few harsh, ill-humored words, used six or eight years ago by the appellant to the appellee, is the head and front of his offending." "Mere petulance of language, austerity of temper, rudeness of manners, or even occasional sallies of passion, if they do not threaten bodily hurt, will not authorize a decree for a divorce." "The wife must disarm such a disposition in her husband by the weapon of kindness." [2 Howard, 754; 2 Kent's Com. 126; 1 Texas R. 58, 481.]

It was error to permit testimony to be given of the general character of the defendant. If such testimony would be admissible under proper averments in the petition, it was inadmissible in this case, where there was no specific charge of general bad character. The defendant was not required to come in prepared to prove all the transactions of his life. Besides, the testimony did not relate to a loss of character after the marriage. It applied to his whole life, and the wife had no right to complain of his want of character before marriage.

The petition is defective in setting out two separate and distinct causes of action. One in the nature of an ejectment upon an alleged title to land, and triable in a court of law, and the other for a divorce, triable in a court of chancery. Granting that our courts have equity and law jurisdiction, still "they are separate and independent of each other, and no more capable, from their very natures, of being mixed, commingled, interfused and blended, than water and oil. When our law says, in substance, that the court shall proceed to try the cause upon the allegations and proofs of the parties, without any distinction between law and equity, it only intended, as is confidently believed, to permit an *equitable defense*, technically such, to be set up to bar or avoid the consequences of *an action of law*, and *mutatis mutandis*."

The case, or rather cases, presented in the petition, require the action of a judge in a court of law, and the action of a chancellor in a court of equity, at one and the same time. It is a misjoinder of the causes of action which the law does not tolerate, and is rendered more conspicuous in this case by the final judgment of the court as to one-half of the action, and a continuance of the cause as to the other half. [Laws of Texas, 1841, p. 20, sec. 4.]

"The appellee's separation from her husband was wrongful; joining her claim of property in the petition was wrongful; every separate order of the court in her favor was wrongful, and the decree of the court was wrongful." [2 Dessaus. 45; 4 id. 33, 99; 1 McCord, 209; 1 McMullen's Eq. 84; 9 Dana R. 52; 10 Mo. R. 499.]

CUNNINGHAM for appellee.

The errors set forth in appellant's assignment are reducible to four heads. The first is the error alleged in granting the injunction.

The 6th section of the law of 1841 gives the right to the court to make any temporary orders respecting the property, and an order restraining the appellant is within this power, and must be presumed by this court to have been granted advisedly. It was granted in term time, and does not appear to have been excepted to, or upon what evidence it was made. There is no provision in this law requiring the petition to be sworn to. There was then no error in refusing to dissolve the injunction upon motion, if such a motion was made, which does not appear. [Laws Texas, vol. 5, p. 17.]

2d. As to the order granting alimony. It is made the duty of the court to make proper allowance for alimony. [Laws 1841, sec. 8.] There was no exception to the order when made, and consequently there was no error in refusing afterwards to set it aside.

3d. Errors alleged in overruling objections to questions put to the witnesses by the counsel for appellee. The objections to the questions were, first, that some of them were leading; and

secondly, in regard to the general character of the defendant below. The questions called leading were only such as were necessary to bring the minds of the witnesses to the subject under investigation. The answers to them were immaterial. There was no error in overruling the other objections. The character of the party, from the very nature of the action, may be shown, as it may in mitigation of damages in slander, libel, seduction, breach of marriage promise, etc. Where excesses are charged, it is the very gist of the action. Excesses may exist in secret vices or notorious want of principle, as well as in open acts of violence or cruelty. Loss of character is one of the best evidences of excesses and outrages. A character such as the appellant has, according to the testimony of the witnesses, is such an outrage as would render it insupportable for any woman of ordinary feeling and pride to live with him. Besides, as a matter of inducement the proof of character was admissible, because it showed good reasons for the fear which the appellee entertained, and explained her conduct.

4th. Error in refusing to grant a new trial, because the facts proved did not justify the verdict.

In this there was no error: 1st. Because the character alone of the appellant would justify it. 2d. The dread with which the appellee was inspired towards the appellant, either from facts within her personal knowledge, and which she was not permitted to divulge in a court of justice, or from his general character, would justify it. And 3d. His treatment in other respects would be sufficient, after the finding of a jury, to prevent this court from reversing the judgment.

Mr. Chief Justice HEMPHILL delivered the opinion of the court.

This suit was instituted by the appellee (who was plaintiff in the court below) for the purpose of obtaining a divorce from her husband, John D. Wright, and for the delivery to her of her separate property, and the one-half of the common property of the conjugal partnership.

She prayed also for an allowance of the sum of two hundred and fifty dollars as alimony during the pendency of the suit, and that an inventory should be made of her separate and the community property in the possession of the husband; and that he be enjoined from disposing of the same in any way whatever, and for such other relief as she might be entitled to under the circumstances of the case.

She states that, as one of the colonists of Martin De Leon under his first contract, she was placed in the possession of one league of land west of the Guadaloupe river.   That whilst she owned that and other property specified in the petition, she intermarried in 1828 with the appellant, John D. Wright, who afterwards, without the knowledge of the petitioner, procured, in 1833, a grant to be made to him of the said league of land in his own name, which fact was concealed from the petitioner until 1836, when she acquired the knowledge of it by chance. That the said John D. Wright left Texas in 1835, and that the petitioner occupied and managed said property until 1842. That in the mean time she disposed of the stock of cattle for a sum still due and unpaid, and the evidence of which indebtedness is in the hands of the husband or his agents.   That since the marriage the amount of acquired community property, which is specified, is considerable; and that all the property, separate and common, is in the possession of the said John David Wright.

She then makes the general allegation, that the said appellant is guilty of excesses, cruel treatment and other outrages towards the petitioner, and that such treatment is of such a nature as to render it insupportable for her to live longer with him.

The defendant pleaded a general exception or demurrer for insufficiency, and answered, denying generally all the allegations and statements of the petition, and especially averring that he was not guilty of the excesses and cruel treatment laid to his charge.

The appellee, in the petition, after the usual prayer for divorce from the bonds of matrimony and a separation of property, prayed further, that the sum of two hundred and fifty

dollars be allowed her for her support during the pendency of the suit, and that the court would cause an inventory of the separate property of the petitioner, and the community property which is in the possession of the defendant, and an injunction restraining him from disposing of the same in any manner whatever.

At the first term of the court after the commencement of the suit, on motion of the plaintiff, an order was made for the allowance of alimony, and for an injunction restraining the defendant from selling, or otherwise disposing of, or removing, the property in the plaintiff's petition mentioned.

Many witnesses were examined orally and by deposition, and exceptions were taken to various opinions of the court overruling objections to the admissibility of much of the evidence.

The jury found that the plaintiff was entitled to her prayer so far as the divorce was concerned, and for two hundred dollars, the proceeds of a house and lot received by the defendant, and for one hundred head of cattle now in the possession of the defendant, and the one-half of the other property, cattle included, money and demands.

The decree of the court was in conformity with the finding of the jury, with the further order that the cause should be continued as to the other issues.

The appellant assigns eleven distinct grounds of error, some of which will be noticed, but without regard to their numerical order of arrangement.

The first is, that the order granting the injunction was erroneous on the grounds that there was no sufficient cause alleged in the petition for the grant of the writ, and that the petition was not verified by affidavit.

By section 6th of the act concerning divorce and alimony [Laws 1841, p. 21], the court is authorized to make such temporary orders respecting the property and the parties, as they may deem necessary and equitable; and by the 9th section, the husband is prohibited, after the commencement of the action, from contracting any debts on account of the community, or to dispose of any lands or slaves belonging to the same; and any

such alienations, made with a fraudulent view of injuring the rights of the wife, are declared to be null and void.

The 10th section provides that, at any time during the pendency of a suit, the wife may, for the preservation of her rights, require an inventory and appraisement of both the real and personal estate which are in the possession of the husband, and an injunction restraining him from disposing of any part thereof in any manner.

These and other provisions of the statute show clearly that, in the contemplation of the legislature, the rights of the wife might be endangered during the progress of the suit; and full powers are vested in the court to make all their orders and issue such writs as may be necessary for their conservation. The terms are emphatic, that the wife may require an injunction restraining the husband from the disposition of any part of the property in any manner, and it would seem to be imperative on the courts to issue such writ whenever it may be demanded by the wife. From the language employed, if construed literally, it would appear that but little discretion can be exercised in determining upon the application, and that the writ, when desired, would be one of right, and would issue almost as a matter of course.

The general statutory provisions, however, regulating injunctions, require applications for their restraining orders, and answers thereto, to be verified by the oath of the parties filing the same. [1 vol. Laws of State, p. 405.]

This, in the opinion of my brethren, to which I assent with some hesitation, is sufficiently comprehensive to control applications for the writ in this as well as in all other civil suits, whatever may be the object or character of the controversy.

In coming to this conclusion, it will be necessary to reconcile an apparent discrepancy between the provisions of the 4th section of the act under which this suit was brought [20, Laws of 1841], and the general provisions regulating the granting and trial of injunctions. The latter requires both petition and answer to be sworn to; the former declares that the defendant shall not be compelled to answer on oath, nor the petition to be taken for confessed, for the want of an answer,

but the decree shall be rendered upon full and satisfactory evidence, independent of the confession or admission of either party.

In suits for divorce, the petitioner is not restricted to the main purpose for which relief is prayed, viz.: dissolution from the bonds of matrimony, but may also pray for a separation of property and for the custody and management of the children.

The provisions of the statute exempting the defendant from answering on oath, and rendering the admissions of the parties incompetent as proof in the cause, have reference only to the primary object of the suit, viz.: the dissolution of the matrimonial relation. The intention of the law was to prevent collusion between the parties in obtaining the divorce; and to effect this, it was deemed necessary that the admission of the parties, whether made before witnesses, or in the pleadings, or on oath, or otherwise, should be disregarded as proof for the establishment of any of the facts alleged as grounds of divorce.

This provision was doubtless borrowed from the doctrines held in the ecclesiastical courts relative to confessions of the parties in suits of this character. The rule of the statute, excluding the admissions of the parties, under all circumstances, is more broad than that of the ecclesiastical law, under which confessions were supported by other proof; or under circumstances repelling all suspicions of collusion were admissible as evidence. [2 Mass. R. 154; 12 C. R. 197; Walker's Chan. Rep. 52; Shelford, 412.]

The object of the statutory provision extending no further than to prevent the answer, if verified by affidavit, from becoming evidence to affect the matrimonial union, should control the construction of the terms employed, and limit their operation within the reason of the rule; and parties should not under the language of the statute, without reference to its object, be permitted to obtain the extraordinary writs of the court on unverified statements contrary to the general provisions of law regulating the issue and trial of such writs. All statements, then, in the pleadings in suits for divorce, relative to the property of the parties, and upon which the restraining order of the court is to be grounded, should be verified by the affidavit of the party seeking such interposition of the judicial authority.

And here, from the course of the able argument of the appellant's counsel, it will be necessary to advert for a moment to the facts which should be stated as grounds of the application for an injunction. In this petition, none of the usual averments upon which such applications in ordinary suits are founded are made, and it is insisted that the petitioner should have set out that the defendant was destroying or wasting, or about to remove or sell the property, or some other facts which would show that the property was in imminent danger of being destroyed; under certain circumstances, such allegations would seem to be unnecessary. The object of the suit is a total disruption of the matrimonial connection, and during the progress of the cause the wife would have the right to such orders and writs as would secure the preservation of her separate property, all of which is by law placed under the management and in the possession of the husband. The legal power of disposition of this property is not in the husband, and consequently an inhibition of the exercise of such power could not operate injuriously or oppressively upon his rights, and the writ would be granted on satisfying the court that such property is in possession of the husband. The wife has an equal interest in the community property, and the husband is forbidden by the statute from contracting after the commencement of the suit any debts on account of such property; and all alienations in fraud of the wife's rights are declared to be null and void, and the court should, on slight showing, issue its injunction for the conservation of this property which the husband is forbidden to incumber with debts, and whose alienations of which in fraud of the wife are declared to be null and void.

Where the property in the possession of the husband is exclusively his own, but upon which the wife may have legal claims or incumbrances, she would be entitled to an injunction upon the averment of her apprehensions on some reasonable grounds that the property would be so disposed of as to render a judgment fruitless if obtained in her favor. These are stated merely as examples of sufficient allegations under the circum-

12

stances referred to, and not as applicable under any circumstances which might affect and control the rights of the parties in property under the management and in the possession of the husband.

The injunction in this case extends only to property alleged by the petitioner to belong to the community, or to herself in her individual right; and where the husband is charged with fraudulent conduct in relation to the wife's individual property, and with abandonment at one time of his home, family and country for seven years, as is alleged in the petition, the court, on the verification of the fact of the wife's rights, would, under the circumstances, without the statement of apprehension on the part of the wife, be justified in issuing such restraining writs as would secure the forthcoming of the property for disposition by the event of the suit.

And as the restraining order was granted in term time, and no motion was made for its dissolution in the court below, either before or after the hearing of the cause, an objection is made for the first time in the appellate court, we do not think it expedient or proper that the injunction should be dissolved, except on the contingencies which will be indicated in the final order of this court.

It is contended that the order granting alimony was erroneous, on the grounds that the facts stated in the petition were not supported by affidavit; and if they had been, were insufficient to justify the order, especially as by the grant of the injunction the defendant was precluded from selling property to pay the installments.

The 8th section of the statute declares that if the wife has not sufficient income for her maintenance during the pendency of the suit for a divorce, the judge shall allow her a sum for her support, proportionate to the means of the husband, until a final decree shall be made in the case.

Whatever may be the amount of the wife's property, there is no probability, under the laws regulating marital rights, that the wife would, independent of the husband, have any separate income sufficient for her maintenance and support. Where

there is no marriage contract, the husband has by law all the property under his control, and the presumption is that the wife has no income for her separate use and benefit.

In this case all the property, whether separate or common, in which the wife had any interest, was alleged to be in the possession of the husband, and consequently the wife was without means of support. And the case as presented was such in its alleged facts as would justify the grant of alimony during the pendency of the suit.

In countries governed by the common law, alimony is granted during the pendency of the suit, on the principle that the whole of the property is supposed by law to be vested in the husband, and that the wife has no separate fortune of her own. And on the same principle the husband is obliged to pay the expenses of the suit on both sides. [Shelford, 586.] Here the ground is different, but much stronger in favor of the allowance of alimony during the pendency of the suit. The presumption is, not that the wife has no property and therefore no income, but that she has property, the income of which is received, not by herself, but by the husband.

All the property in the possession of the husband is supposed to be common between him and the wife, and if not common between him and the wife, there is an equal probability that it belongs to the wife, while the husband receives the entire rents, profits and revenues of the whole property.

Where alimony is demanded, there is no doubt that the wife should, as was done in this case, state the means at the disposal of the husband, whether they arise from her own or the community estate, or the separate property of the husband. Such a statement is technically called an allegation of faculties, and in the ecclesiastical courts the defendant is required to respond on oath, though his answers are not altogether conclusive. What would be the legal effect as evidence of answers upon oath to matters upon which the defendant was not specially interrogated, need not be discussed, and reference is made to the usual practice in such cases only to show that, whether the wife be required or not to make her statement on oath, the responsive statement of the husband must be verified by affidavit.

As a rule of practice the courts should require applications for alimony to be sustained by the oath of the party or evidence *aliunde*, otherwise they cannot act advisedly in determining upon the amount which, under all the circumstances, the husband should contribute to the support of the wife.

In this case the order for alimony was granted in term time, without exception on the part of the appellee. After the trial of the cause, at the next term, a motion to set aside the order was, we think, properly overruled.

The evidence on the trial showed that the amount of alimony was not unreasonable, and furnished sufficient ground on which to sustain the order, although it may have issued originally on insufficient proof or information. On the subject of alimony, see Poynter, 246, 283; Shelford, 587, 600; Roper on Husband and Wife, p. 308, note K.

Numerous exceptions were taken to the evidence on various grounds, some of which will hereafter be noticed. We proceed now to consider the main question in the cause, viz.: whether, under the allegations of the petition, any evidence was admissible to prove the alleged grounds of divorce.

These in the language of the petition were " excesses," cruel treatment, and other outrages toward the plaintiff on the part of the defendant, and that the ill treatment was of such a nature as to render their living together insupportable.

Whether evidence would be admissible under such charges must depend upon the rules in relation to certainty in pleading generally, and especially in controversies of this character.

The statute regulating the subject matter requires a full and clear statement of the cause of action, and such other allegations pertinent to the cause as may be deemed necessary to sustain the suit.

This full and clear statement must embrace the material facts upon which the complaint is founded, or if any offense is charged, the principal facts constituting this charge, together with the material circumstances of manner, time and place.

This explicit statement of facts is necessary, that the defendant may know what he is called upon to answer and be enabled to make the proper defense, and that the tribunal having

cognizance of the controversy may be apprised of the matters at issue and be enabled to administer the proper remedial justice. [Story on Equity Pleadings, sec. 23; Cooper, 5; Mitford, 37; Chitty, vol. 1, p. 244; Cowper, 612; Forense, Mexican: Prov. Peña y Peña, vol. 1, p.—; 6 M. R. 510; 12 M. R. 693; Mitchell *vs*. Mims, Texas R. 1 vol. p. 443.]

In the ecclesiastical tribunals in England, before which alone suits are instituted for separation from bed and board on the ground of cruelty, the rule is, the libel should specify the acts of cruelty, and when and where committed; though minute acts of cruelty need not be pleaded, and can properly come out in the evidence. [Shelford, pp. 398, 431.]

The authorities are uniform in requiring that, in suits brought for divorce on the grounds of adultery or cruelty, the· acts of adultery or cruelty must be specifically stated. [See Fellows *vs*. Fellows, 8 N. H. Rep. 160; 1 Missouri Rep. 228; 2 Johns. Chan. R. 225.] Or, where desertion without sufficient cause and against the consent of the other party is ground for divorce, it will not be sufficient to state that the libellee unnecessarily and without sufficient cause abandoned the libellant; but the circumstances attending the desertion must be particularly stated, that the court may judge of the legal sufficiency of the complaint. [11 N. H. Rep. 224; 12 N. H. Rep. 80.]

The allegations of the petition tested by the provisions of the statute and the rules of pleading, particularly in controversies of this character, are vicious from the want of specification of facts constituting the offenses, or even averments of a course of misconduct, from which the class of facts relied upon might be inferred.

The terms of the statute " excesses," "cruel treatment and outrages, are conclusions from facts, or are rather compound questions of law and facts; the constituent acts and circumstances of which should be set forth that the court may judge whether, in legal contemplation, they are within the description of the offenses that are by statute good grounds for divorce.

The defendant is entitled to have the judgment of the court,

·whether the facts charged in the petition constitute offenses in law, before he can be compelled to proceed to trial on these facts. This right would be totally unavailing, if a general charge, without further specifications, be sufficient to admit evidence of particular facts to substantiate the charge.

The usual order of procedure would, in fact, be reversed. The evidence, and not the pleadings, would show the grounds of complaint, and their sufficiency could be determined alone upon the evidence; thus necessarily subjecting the defendant to all the vexation and expense of a trial, whether the acts complained of be legally sufficient to support the action or otherwise.

Without a specification of the facts constituting the offenses charged, the defendant has no opportunity of invalidating the proof by contrary evidence. He is not informed of the act done or omitted, or of the time, place or circumstances of the facts to be established by the evidence.

Could the defendant or his counsel have imagined that, under these charges, an attempt would be made to prove his general bad character, or divine any of the particular circumstances which may have occurred within the twenty years that had elapsed since the marriage that were to be brought forward for his condemnation?

The charges point not only to no facts, but to no particular course of misconduct, such as the invariable use of harsh and menacing language, neglect in sickness, or refusing the comforts and necessaries of life, etc., etc.

This generality of pleading is usually adopted, accompanied with allegations of specific offenses under which the special charges may not only be proved, but, under circumstances of the same character, be established by the evidence.

All the authorities agree as to the certainty required in the pleading in suits of this character, but not as to the effect of a want of an exception by the defendant to their insufficiencies.

In Hill vs. Hill [vol. 10, New Series, Alabama Reports], the facts of which the cruelty complained of consisted were not stated, but it was held that the objection was waived by omitting to state this as cause of demurrer; and in Lewis vs. Lewis

[5 Mo. Rep. 278], the bill contained a general charge of indignities without specifying in what they consisted; the court was of opinion that the bill could have been demurred to successfully, but, having been answered, evidence might be taken of the facts charged, and a decree rendered on the proof. This statement of the case is taken from Cheatham *vs.* Cheatham [10 Mo. R. 296].

But in Cod *vs.* Cod [2 Johns. Chan. R.], there was a general charge of the commission of adultery, which was denied in the answer. The court refused to order a feigned issue to try the charge, as it did not afford the least information of certainty as to time, place or person; and the defendant could not know how to meet a charge so vague and uncertain. [See Stokes *vs.* Stokes, 1 Mo. Rep. 228, and the case from the New Hampshire Report before cited.]

The case of Cod *vs.* Cod is not entirely parallel with the one under review, as in the former there was no verdict or judgment; the chancellor very properly refusing to permit the trial of the facts to proceed on the vague and indefinite issue formed by the pleadings.

Had the issue been improvidently submitted to a jury, and they had found, as in this case, that the plaintiff was entitled to a divorce, the chancellor would not have considered his conscience sufficiently informed of the facts of the case to have authorized a divorce in conformity with the verdict. The bill would have been dismissed or the plaintiff permitted (as was the case in fact) to amend his pleadings, and present proper issues to have the facts ascertained.

In the case of Stokes *vs.* Stokes [Mo. R. 228], the charge was that the defendant was residing near the town of St. Louis with a certain Ann Smith, whom he had imposed upon the people of this state as his lawful wife; and the jury found that the defendant had committed adultery in St. Louis, Missouri, since his arrival in this place. The court was of the opinion that the allegation was insufficient for uncertainty, and that this was not cured by the finding of an offense which may have been committed since the commencement of the

suit, and with a different person from the one named in the bill.

If the substantial defects in the allegations in this petition could be cured by any finding whatever, yet no such intendment is aided on this verdict as would supply such omissions or defects. In form and in substance it is unauthorized by the statute. The duty of the jury is to pass upon "material facts alleged in the petition," and not to find that the plaintiff is, or is not, entitled to a divorce. If the "material facts" be affirmed by the jury, the court may still refuse to enter any decree upon the verdict, as the facts charged and found may not, in legal contemplation, be good cause of divorce.

When the alleged facts are insufficient, the charges are vague and indefinite, giving no information of the facts, or the time, place or circumstances, as in this case, the court ought not to permit such issues to be submitted to the jury.

The trial of the former is but a waste of time, as the facts, if proved, would not support a decree; and the latter furnished no proper foundation for proof, especially in controversies of this character; collusion between the parties might mask itself under the generality of pleading so as to be very difficult of detection.

The defendant, under such general charges, knowing nothing of the facts to be proven against him, could not be expected to rebut them by proof; and the want of evidence on his behalf could not excite any suspicions of the sincerity of his opposition to the petition of the plaintiff; and while the object nearest to his wishes is in the process of accomplishment, he may apparently be suffering the deepest injury from the infringement of his rights of defense.

Such vagueness of statement has, therefore, a tendency to affect the highest interests of society, in facilitating the dissolution of the marriage relation; and is perhaps still more objectionable in that view than of the injustice which through its instrumentality may be inflicted upon innocent persons, who cannot protect themselves from charges that were never heard of until divulged by witnesses on the stand.

In the case of Cod *vs.* Cod, the court would not permit such issues to go to the jury; and in the case of Lucas *vs.* Lucas, at the last term, it was decided that, after the reading of the petition, the court might withdraw the case from the jury and dismiss it, when the facts alleged in the petition were not sufficient grounds for divorce.

In the case of Jones *vs.* Stevens [11 Price, 235, 283, vol. 5 Exchequer Rep. p. 62], which was an action for damages for a libel, it was held that general evidence of the plaintiff's bad character and ill-repute in his business as a practicing attorney cannot be admitted either to contradict the allegation in the declaration that the plaintiff exercised the business of an attorney with great credit and reputation, with a view either to the mitigation of damages on the general issue, or in support of averments in the defendant's pleas that the plaintiff was a disreputable professor and practitioner in the law.

The ground upon which the exclusion of such evidence was placed was, principally, that a party cannot be prepared to rebut it, and could not safely go to trial without being surrounded by a host of friends, consisting of all persons who may ever happen to have known anything of him. That the facts ought to be stated specially, to give the other party an opportunity of denying them; for he could not come to the trial prepared to justify his whole life.

There was no demurrer to the plea which pleaded these general charges by way of justification.

The court having refused to admit evidence in support of these charges, a motion was made for a new trial on that ground, but was overruled.

It was also laid down that pleas by way of justification, *generally*, aspersing the character of the plaintiff by averments, without stating particular acts of bad conduct, apposite to the justification of the defendant, are not only demurrable, but ought to be demurred to, and that such demurrers do not admit the truth of the slanders in the libel, but are no more than saying that the plea is impertinent, and that the law does not require any answer to be given to it.

Without expressing any opinion on the principal question decided in the above cause, viz.: that in actions of slander the general bad character of the plaintiff cannot be given in evidence in support of a plea which had pleaded such fact by way of justification, or under the general issue in mitigation of damages, it is intended to refer only to the reasoning of the court in adopting such rule of exclusion as peculiarly applicable to the case under review; for if evidence be admitted under the general charges of the petition, the defendant would be placed in greater difficulty than was the plaintiff in the case cited; for the latter might, by a host of witnesses, hope to sustain the single point of the fairness of his general character, whereas the former, not knowing what acts of his life may be attacked, would be under the necessity, for his complete defense, of being provided with proof to justify all his acts from the day of his marriage to the time of commencing the action.

The grounds on which the evidence of general bad character was rejected in the above case, operate more forcibly in the present to the exclusion of all in support of the vague charges of the petition; and therefore the exceptions to the ruling of the court admitting such evidence were well taken, and must be sustained. [*Vide* Anson *vs.* Stuart, 1 Term Rep. 748; Burges *vs.* Beaumont, 49 C. L. R. 962.]

The evidence on which the verdict was principally founded, being excluded, the decree must, as a matter of course, be set aside and a new trial awarded.

It has not been my intention to discuss the doctrines on the subject of pleading, or to intimate that there are not many cases in which generality of pleading to avoid unnecessary prolixity is not only proper, but too much particularity is inadmissible. Nor do I intend to examine how far defective pleadings may be aided after verdict by intendment, but it is deemed proper to state that, in cases of this character, which seem to be increasing, such vagueness of statement is not only demurrable, but evidence is not admissible in its support, nor will the defects be regarded as cured by verdict or decree.

In this case the facts proved did not authorize the verdict of the jury.

The general character of the appellant, however infamous it may be, forms no ground of divorce under our laws; and if it did, the appellee could derive no advantage from such provision.

The character of the appellant has been deeply stained for years, and was blackened before his return from the Rio Grande; but this did not prevent the cohabitation of the parties, after a suspension of seven years, from being resumed and continued until shortly before the commencement of this suit. These facts would prevent the objection now from being available, if it were ever legally admissible under any circumstances. There might possibly be a state of facts, where a charge of violence, for instance, depended upon circumstantial proof, in which the general character of the defendant, as a murderer, and perpetrator of the most shocking outrages, might form one of the circumstances, conducing in some degree to the proof of the fact alleged. It will be sufficient to decide on this proposition, however, when it is presented by the facts of a case for our consideration.

Had there been a charge of neglect during sickness, the evidence of Dr. Webb would have established an instance of the cruel treatment contemplated by law. But its effect would depend greatly upon the date of the accusation. The facts evince barbarity of feeling on the part of the appellant towards the partner of his bosom, and her dread that the use of the necessary remedies for her recovery would irritate her husband, impresses the mind very strongly that he had been seriously guilty of the like inhuman conduct.

The evidence does not show but that the circumstances may have happened years ago, and been long since forgiven.

The language used in conversation with his wife, at the house of one of the witnesses, denotes not only a total absence of all that tenderness and affection which should characterize the marriage relation, but a brutality of feeling, from the effects of which the wife might well be in dread of bodily harm or injury.

Whether as strong and well founded impressions on the part

of the wife that the defendant had imbrued his hands in the blood of her own son, would not be a sufficient ground for a divorce, we do not think it necessary to determine; as the evidence was not admissible under the pleadings, and we are not sufficiently informed of the circumstances of the separation, or at what time after this alleged murder the wife fled from the contamination of intercourse with her husband, to give an opinion on the facts, even if such were proper or necessary. We are of opinion that the wife may properly sue in her own name for a divorce, and that the objection for the want of a proper party is untenable. The wife, throughout the statute, is treated as a party to the suit. She is styled complainant or defendant, and the intervention of a *prochein ami* does not appear to have been anticipated by the legislature. The doctrines in relation to the right of the wife to appear in her own behalf in courts of justice, under our former laws, under certain circumstances, were familiar to the minds of the legislators at the time of the passage of this statute. As a general rule, the wife could not appear as a party to a suit without the license of her husband or of the court. But to this there were the exceptions that she could implead her husband when he was about to dissipate her dowry for alimony or divorce, or nullity of marriage, etc. [Forense Practica, Peña y Peña, vol. 1, p. 236.] Where the wife deems it necessary to demand the protection of the courts adversely to her husband, or for the preservation of her property, she has always been regarded as having the right under our laws to appear in person and prosecute or defend, as if she were an unmarried woman and laboring under no disability from her coverture.

An objection has been taken, also, to the order continuing the case as to issues regarded as undecided. Another question of equal importance might have been raised as to the right of appeal, until the final decision in the cause. These are points in practice not without interest, but their consideration, from the disposition we shall make, will become immaterial. It may be remarked that the verdict and judgment in terms, disprove, in effect, all the matters placed in issue by the pleadings.

The jury find that the plaintiff is entitled to some money, and some cattle, and to one-half of the other property, cattle included, money and demands, and the decree follows the verdict.

This certainly disposes of the whole property. But the court and parties understood that the question in relation to the league of land remained undecided, and therefore the order for a continuance as to that issue. Terms used in judicial proceedings must be understood in their usual acceptation; and when the dispute is about property, and a portion is given to one, and all the remainder is ordered to be divided, the appellate court must regard this as a disposition of the whole matter in controversy; the only question being, whether this action is in conformity with the law and the evidence or otherwise.

It is ordered, adjudged and decreed that the judgment of the district court granting the divorce and the division of property be reversed, and that the cause be remanded for a new trial, with leave to the parties to amend their pleadings within two months after the mandate of this court has been received; provided, that in the meantime a session of the lower court does not intervene. That the orders granting the injunction and for alimony be continued in force; but if the petition be not amended within the time specified, then that the said orders be set aside and the cause dismissed, and that the appellant pay the costs of suit in this court expended.