[Civ. No. 1632.   Third Appellate District.—February 6, 1917.]

MARY PEDREIRA, Respondent, v. A. F. PEDREIRA, Appellant.

ACTION FOR MAINTENANCE—MISCONDUCT OF HUSBAND PRIOR TO MARRIAGE—EVIDENCE OUTSIDE OF ISSUES.—In an action by a wife for maintenance without divorce, based upon cruel and inhuman treatment, it is prejudicial error to permit the plaintiff to testify, over objection, that the defendant had had intercourse with her frequently for seven or eight years prior to their marriage, and at nearly every occurrence he had promised to marry her, where the pleadings contained no appropriate allegation with reference to the defendant's acts before the marriage.

ID.—SPECIFIC ACTS OF CRUELTY—EVIDENCE.—Evidence of specific acts of cruelty is not admissible under a general allegation of cruel treatment.

ID.—WIFE'S NECESSITIES—EVIDENCE.—In such an action, the court should permit inquiry into the necessities of the plaintiff, and her manner of living in order that a suitable award might be made.

ID.—COMMITMENT OF PLAINTIFF TO ASYLUM—CROSS-EXAMINATION.— Where the plaintiff alleged as an act of cruelty that the defendant caused her to be committed to an insane hospital, and she testified on her direct examination to acts concerning the commitment that would necessarily create the impression that she was sane at the time of such occurrence, it is improper to curtail defendant's inquiry on cross-examination directed to the point that she did not know even that she was examined or committed; in other words, that her mind was blank as to what happened.

ID.—RIGHT OF PLAINTIFF TO VERDICT — EVIDENCE OF CRUELTY — ERRONEOUS INSTRUCTION.—An instruction that if the jury found that the plaintiff was sane at the time of the marriage and there is evidence of cruelty, the verdict will be for the plaintiff, and that if the jury believed from the testimony that the plaintiff was treated in a cruel and inhuman manner as alleged in the complaint, and that the general treatment of the plaintiff was cruel and inhuman, their verdict must be for plaintiff, is erroneous, as it authorized the jury to find for plaintiff if there was any evidence of cruelty, and also ignored the consideration of the weight and credibility of the evidence and the proper function of the jury in relation thereto, and also failed to state the elements that should enter into the determination of the amount to be awarded the plaintiff.

ID.—WIFE'S INSANITY AT TIME OF MARRIAGE—INSTRUCTION—RIGHT OF DEFENDANT.—Where it is alleged as an act of cruelty that the defendant had the plaintiff committed to an asylum, the defendant has the right to have the jury instructed along the line suggested by him in requests concerning his theory as to the wife's insanity at the time of marriage.

ID.—ATTORNEY'S FEE—ALLOWANCE TO WIFE—WHEN PROPER.—A wife is entitled to an attorney's fee in a suit for maintenance only when it is necessary to enable her properly to maintain the action, and the burden is upon her to show the allowance is necessary.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

F. W. Henderson, and Hugh K. Landrum, for Appellant.

Jackson Mahon, for Respondent.

BURNETT, J.—The action, brought under section 137 of the Civil Code and grounded upon cruel and inhuman treatment, was for separate maintenance without divorce. The specific instances of cruelty alleged were: 1. Defendant absented himself during the birth of a child to plaintiff; 2. Defendant did not provide a doctor or nurse for plaintiff during childbirth; 3. Said neglect caused plaintiff great physical pain and mental anguish by reason of which the child was born dead; 4. That, on April 14, 1914, defendant caused plaintiff to be moved to the Merced sanitarium and thence to the Merced county jail, whence the plaintiff was committed to the state hospital at Stockton; 5. That, upon

her release from said hospital in July, 1914, defendant refused to take plaintiff to his home or to live with her as his wife.

In the answer there was a specific denial of the allegations of cruelty, an admission that plaintiff was committed to said hospital, but an explanatory averment that defendant was advised by the medical attendants of plaintiff that it was necessary, for the protection of the plaintiff and those who might come in contact with her, that she be committed to said hospital because she was violently insane, and that she was regularly committed to the state hospital after a hearing in the superior court of the county of Merced. Defendant further alleged that plaintiff had agreed to accept from defendant the sum of forty dollars per month as and for her separate maintenance. By way of cross-complaint it was further averred that at the time of the marriage of plaintiff and defendant she was of unsound mind and not capable of contracting marital relations; that because of this insanity defendant prayed for an annulment of the marriage.

The action was tried with the assistance of a jury. The jury found that the plaintiff was not insane at the time of the marriage; that defendant had treated plaintiff in a cruel and inhuman manner subsequent to said marriage; that plaintiff had not agreed to accept the sum of forty dollars per month for her separate maintenance, and that seventy-five dollars per month was a reasonable amount for such purpose. The court adopted said findings and rendered judgment accordingly, and in addition allowed plaintiff four hundred dollars for her attorney's fees.

It is claimed by appellant that many prejudicial errors are disclosed by the record, and we proceed to notice some of the assignments.

Over objection, plaintiff was permitted to testify that the defendant had had intercourse with her frequently for seven or eight years prior to their marriage, and that at nearly every such occurrence he promised to marry her. The court declared "it would not be evidence that you could rely upon," but overruled the objection.

The evidence seems to have been entirely outside of the issues made by the pleadings, and could hardly assist "in getting at the truth of the facts disputed." The natural effect of such testimony would be to excite sympathy for

the plaintiff and hostility toward the defendant.    It can be easily imagined how the jury, or the judge of the court for that matter, would regard with indignation and contempt a man who, under repeated promises of marriage, had seduced plaintiff and had actually been guilty of such illicit conduct while his first wife lay upon her deathbed.    The prejudice thus aroused would hardly permit of a dispassionate and impartial consideration of the evidence relevant to the issues made by the pleadings.

Respondent contends that ''the object of this testimony was not to prejudice the defendant in the eyes of the jury, but to arrive at facts which would and did throw light on the issues involved.    These acts of intercourse bore directly on the attitude of the defendant at the time he married plaintiff, and were the very acts upon which his subsequent treatment of plaintiff was based; they were facts necessary to be before the jury in order to obtain a fair understanding as to the relations of the parties.''    As to this we think plaintiff is in error.    If it had been supposed that it was important to inquire into the acts of appellant before the marriage, there should have been some appropriate allegation in reference thereto.    The fact is, said evidence refers to a time remote from anything referred to in the complaint and to conduct before marriage, whereas the cause of action is entirely based upon treatment of plaintiff by defendant after the marriage took place.    Of course, the general rule is as stated in Jones on Evidence, volume 1, paragraph 140a, that ''Evidence of other acts of the parties, outside of the acts in record and unconnected with it, are not generally admitted in evidence.''    ''The rule excludes,'' as stated in *People* v. *Lane*, 100 Cal. 379, [34 Pac. 856], ''all evidence of collateral facts, or those which are incapable of affording a reasonable presumption or logical inference as to the principal fact or matter in dispute; and evidence of another offense cannot be given unless there is some clear connection between the two offenses by which it may be logically inferred that if guilty of the one the defendant is also guilty of the other.''    The statement was made in a criminal case, but the same principle would manifestly apply here.    We can see no logical connection between said conduct before marriage and the acts after marriage which are set out in the complaint.

Objection was also made to evidence of other specific acts of cruelty than those presented by the pleadings. If important enough to be shown they were certainly important enough to be alleged. It may be permissible to show a general course of conduct as supplementing specific acts of cruelty where only the specific acts are set out, but the rulings complained of could hardly be justified except upon the erroneous theory that it is not necessary to allege any specific act, but that a general allegation of cruel treatment is sufficient.

We think, also, that the court should have permitted an inquiry into the necessities of the plaintiff and her manner of living, in order that a suitable award might be made for her maintenance. Manifestly, much discretion in this matter must be confided to the trial court, but the discretion is not an arbitrary one, and must be exercised in view of the circumstances of the parties. The financial condition of the defendant and his earning capacity, together with the possessions of the plaintiff and her accustomed style of living, were proper elements to be regarded in the consideration. In *Kusel* v. *Kusel,* 147 Cal. 57, 60, [81 Pac. 295], there is an interesting discussion of the difference between an allowance to the wife on divorce and the separate maintenance that is contemplated by the code. Referring to the latter it is said: ''The action does not contemplate a divorce, but, on the contrary, that the parties shall continue to remain as they were before, husband and wife. The rights of the wife in the remaining property of the husband are not destroyed or affected in the least by the decree or judgment. The necessity for the separate maintenance may terminate at any time by reconciliation of the parties, or by the death of one of them. The law favors the reconciliation of the parties, and it should not be construed so as to afford a temptation for the wife to press an action for maintenance rather than to seek restoration to her marital rights.'' This view of the spirit of the law emphasizes the importance of confining the allowance to the necessary maintenance of the wife in comfort and decency according to her accustomed standard of living.

We think the cross-examination of plaintiff in reference to her commitment to the hospital for the insane was improperly curtailed. On her direct examination she had testified to facts concerning said occurrence that would neces-

sarily create the impression that she was sane at the time. It would be argued from this that the husband had knowledge of her condition, and was therefore chargeable with cruelty in having her committed. To rebut this unfavorable inference several questions were asked of the witness directed to the point that she did not know even that she was examined or committed,—in other words, that her mind was a blank as to what happened. The inquiry was addressed to the same matter involved in the direct examination and should have been permitted. It may be added that counsel for appellant, at the time of the direct examination, sought to have respondent declare whether she claimed to have been sane at the time she was committed, and her counsel answered: "Yes, you bet she was." It is true that a moment after he said: "I don't claim she was railroaded. The jury can draw their own conclusion. I don't claim that she was sane or insane." However, the effect of her testimony was as we have indicated, and appellant had the legal right to subject it to the test of cross-examination. The gravity of the inquiry is quite apparent, as it involved the most serious charge of cruelty in the case.

After stating to the jury that they must first find whether plaintiff was sane or insane at the time of her marriage, the court, on request of plaintiff, gave this instruction:

"If you find that the plaintiff was sane at the time of the marriage and there is evidence of cruelty, then your verdict will be for the plaintiff, in the amount that you may determine to be adequate, and for her attorney's fees and for her costs of suit.

"I instruct you, that if you believe from the testimony introduced in this case, that the plaintiff was treated in a cruel and inhuman manner as alleged in the complaint, and you believe that the general treatment of the plaintiff by the defendant from the time of the marriage to the date of the commencement of this trial was cruel and inhuman, your verdict will be for the plaintiff."

Probably the most serious objection to the instruction is that it authorized the jury to find for plaintiff if there was any evidence of cruelty. The law, of course, required that they be convinced by a preponderance of the evidence in order to justify such finding. The instruction as given also ignored the consideration of the weight and credibility of

such evidence and the proper function of the jury in relation thereto. It is subject, also, to criticism in failing to state the elements that should enter into the determination of the amount to be awarded plaintiff.

The instruction as to the general treatment of plaintiff by defendant was not justified by the pleadings. There was no such allegation and therefore it was not within the issues. Following the instruction the jury might have believed that none of the specific allegations of cruelty was supported and yet have found in favor of plaintiff upon this sweeping direction as to general treatment. This would be contrary to the established rules of practice.

Appellant complains also of the action of the court in refusing certain instructions proposed by him concerning his theory as to the insanity of plaintiff at the time of the marriage. They seem to embody a correct principle of law, and it is not shown that they were inapplicable to the evidence. Appellant had a right to expect that the jury would be instructed along the line suggested.

In considering the instructions we are mindful of the fact that the verdict of the jury was simply advisory, and that the erroneous action of the court thereon must be regarded in a somewhat different light from the case where a jury may be demanded as of right. However, in view of the natural and usual inclination on the part of the judge to adopt the findings of the jury and the fact that they were adopted in this case, it seems quite important that the jury should have been correctly instructed.

There is apparent justification for appellant's complaint as to the allowance of four hundred dollars for an attorney's fee. As we understand it, the law is settled that a wife is entitled to an allowance of this kind only when it is necessary to enable her properly to maintain her action, and the burden is upon her to show that such allowance is necessary. Respondent is challenged by appellant to point out any evidence showing such necessity. It is declared that plaintiff made no attempt of any kind to prove that it was necessary, that the record is absolutely silent upon the point, and that there are no findings of fact upon which such an order could be based. The only reply is that the contention is absurd, but it can hardly be so easily answered. The statute itself, section 137 of the Civil Code, contemplates that the order shall

be made only when it is necessary to enable the wife to present her case, and, in commenting upon this provision of the law, the supreme court, in *Loveren* v. *Loveren,* 100 Cal. 493, 494, [35 Pac. 87], said: "The plain object of this statute was to empower the court, . . . upon a proper showing made by the wife for that purpose, to compel the husband to provide her with the means necessary to enable her to prosecute or defend the action."

Other errors are claimed by appellant, but it is deemed unnecessary to notice them specifically. It is earnestly contended that the evidence is utterly insufficient to support the findings of cruelty. There is force in the contention, but we are not prepared to say that there is an entire failure in that respect. The evidence, however, bearing upon and lending support to the allegations of the complaint seems quite meager, and we think in fairness to appellant that there should be a new trial. If the evidence were strong and convincing, it might be held that the errors committed were without prejudice, but as the case appears so doubtful upon the merits, in view of the record we think the judgment should not be permitted to stand. It is, therefore, reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 4, 1917.