[Civ. No. 28518. First Dist., Div. One. Nov. 9, 1970.]

HAMILTON C. MARTINS, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
CORIENNE A. MARTINS, Real Party in Interest.

872

---

COUNSEL

J. Donald Pettus for Petitioner.

No appearance for Respondent.

William B. Wolfson for Real Party in Interest.

OPINION

ELKINGTON, J.—Petitioner Hamilton C. Martins (hereafter Hamilton) seeks to prohibit the Marin County Superior Court from enforcing contempt orders against him for failure to pay certain sums due under a "Marital Settlement Agreement" with real party in interest Corienne A. Martins (hereafter Corienne).

As relevant to the contentions of the parties, the agreement provided:

"Our purpose, subject to approval by a court of competent jurisdiction, is to make an integrated agreement to effect a final and complete settlement of all our rights and duties with reference to each other, including both property and support, of every kind and nature, past, present and future. We intend that each provision of this agreement be in consideration for each and every other provision, and each of us intends hereby to specifically waive any and all rights we may have arising out of the marital relationship, including the right to alimony, support and maintenance, except as we expressly provide in this agreement.

"As an integrated part of this agreement, and as part of the consideration of the promises, covenants and conditions contained herein, Husband agrees to pay to Wife by way of property settlement and division of community property and not by way of alimony, support or maintenance, the sum of Nine Hundred ($900.00) Dollars to be paid as follows: Three Hundred ($300.00) Dollars on or before February 1, 1969, Three Hundred ($300.00) Dollars on or before March 1, 1969, and Three Hundred ($300.00) Dollars on or before April 1, 1969.

"It is the purpose and intent of the parties that the provisions in this agreement concerning division of property be non-severable from the other portions of this agreement and not subject to modifications of any kind. . . .

"Husband agrees to pay Wife's attorneys' fees and costs in the total sum of Five Hundred ($500.00) Dollars as and for fees due and payable no later than thirty (30) days after the entry of an Interlocutory Decree of Divorce or a Decree of Annulment between the parties. . . .

"It is further understood and agreed that this agreement shall be effective only from and after its approval by a court of competent jurisdiction. . . . [I]t is further understood and agreed that in the event . . . a court of competent [jurisdiction] shall enter a decree of divorce or annulment, the court may incorporate this agreement in the decree of divorce or annulment and make its order requiring each of the parties to perform each and all the obligations by them to be performed in accordance with the terms of this agreement."

Thereafter, on April 2, 1969, a decree was entered in an annulment action brought by Corienne which provided that the agreement was "hereby approved, incorporated herein and made a part of this judgment, and plaintiff and defendant are ordered to perform all executory terms and conditions of said Marital Settlement Agreement."

The agreement's references to "integrated agreement" were undoubtedly intended in the sense used in *Bradley* v. *Superior Court,* 48 Cal.2d 509 [310 P.2d 634], and *Plumer* v. *Superior Court,* 50 Cal.2d 631 [328 P.2d 193], where property settlement and support provisions were found to be unseverable and therefore "integrated." *Bradley* and *Plumer* held that such an integrated agreement, even though incorporated in a divorce decree by an express order to make the payments therein provided, was to be treated as a private agreement of the parties, not subject to modification, and not enforceable by contempt. (See also 3 Witkin, Summary of Cal. Law (1960) p. 2685.) The rationale: The court may not impair the obligation of a valid contract (Cal. Const., art. I, § 16; *Bradley* v. *Superior Court, supra,* p. 519); and payments provided by such an agreement "found to constitute an adjustment of property interests, rather than a severable provision for alimony, should be held to fall within the constitutional proscription against imprisonment for debt" (*Bradley* v. *Superior Court, supra,* p. 522; Cal. Const., art. I, § 15). The *Bradley-Plumer* rule purports to be modified in some particulars by Civil Code section 139, repealed, effective January 1, 1970, and Civil Code section 4540, operative January 1, 1970 (see 3 Witkin, Summary of Cal. Law, 1969 Supp., p. 1507).

Hamilton paid none of the attorney fees and but $300 of the $900 due under the agreement. As a result Corienne commenced contempt proceedings on February 17, 1970. Hamilton was thereafter found to be in contempt for failure to make the agreed payments and was sentenced to one day in the county jail. On the filing of his application for prohibition we granted a stay of execution.

Relying on *Bradley* v. *Superior Court, supra,* 48 Cal.2d 509, and *Hough* v. *Superior Court,* 179 Cal.App.2d 342 [3 Cal.Rptr. 778], Hamilton contends that since "the payments . . . constitute an inseverable part of an integrated adjustment of all property relations of the parties and not a severable provision for alimony, enforcement of such payments by contempt proceedings is forbidden by the constitutional prohibition against imprisonment for debt."

Corienne argues (1) "The agreement to pay $900 is enforceable by contempt since the parties themselves agreed that without the approval by a court of competent jurisdiction the agreement should be ineffective," and

(2) "The finding of contempt is valid in view of the finding of the court that the attorneys' fees ordered by the court have not been paid."

■ We have concluded that the contempt orders were in excess of the superior court's jurisdiction and that the peremptory writ must be granted. Our reasons follow.

■ We first consider the remaining $600 due to Corienne from Hamilton under the agreement.

We disagree with Hamilton's argument that these payments constitute an inseverable part of an integrated adjustment of the property rights of the parties and the support rights of Corienne. His conclusion that contempt proceedings are not available is nevertheless sound for a different reason. By its terms the agreement severs the agreed payments from the remaining integrated provisions. As pointed out, they were by "way of property settlement and division of community property and not by way of alimony, support or maintenance." We recognize that the agreement generally proclaims that it is "integrated" but we must hold that the contrary specific language must prevail. It is settled law that where general and specific provisions of a contract are inconsistent, the specific provision will control. (Code Civ. Proc., § 1859; *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 35 [17 Cal.Rptr. 12, 366 P.2d 455]; *McNeely* v. *Claremont Management Co.*, 210 Cal.App.2d 749, 753 [27 Cal.Rptr. 87].)

■ It follows that the amount of the unpaid sums was but a debt incurred in the course of an agreed division of the parties' property. Imprisonment based upon the nonpayment of such a debt would clearly be violative of article I, section 15, of the state's Constitution.

Yet another reason appears for which the court's contempt rulings, as they relate to the unpaid $600, must be set aside. It is conceded as to those sums that the only justification of the contempt orders lies in the theory that the payments had been *court ordered* for the support of Corienne. As noted, the ordered payments were part of and coextensive with the annulment decree. ■ It is now settled that a "judgment of annulment terminate[s] the court's authority to enforce payment of alimony. . . ." (*Withers* v. *Superior Court*, 91 Cal.App. 735, 736 [267 P. 547]; see also *Sefton* v. *Sefton*, 45 Cal.2d 872, 874-875 [291 P.2d 439]; *Brooding* v. *Brooding*, 172 Cal.App.2d 94, 98 [342 P.2d 50].) No issue is raised here that the questioned payments were alimony pendente lite accruing before judgment which under some circumstances may constitute an exception to this rule. (Cf., *Millar* v. *Millar*, 175 Cal. 797, 809-810 [167 P. 394]; *Middlecoff* v. *Middlecoff*, 171 Cal.App.2d 286, 289-290 [340 P.2d 331].)

■ We now discuss the contempt orders as they relate to Hamilton's agreement to pay attorney fees.

This promise, unlike that relating to the unpaid $600, is clearly integrated with the property settlement *and* support provisions of the agreement. The *Bradley-Plumer* rule that such an obligation is not enforceable by contempt sanctions is therefore applicable. Civil Code section 139 as amended in 1967 (repealed, effective January 1, 1970), and which would otherwise relate to these proceedings,[1] does not purport to prevent such an application in an *annulment* action. That section provides that in *divorce* or *separate maintenance* actions "the court may compel the party against whom the decree or judgment is granted to make such suitable allowance for support and maintenance of the other party . . . having regard for the circumstances of the respective parties . . . and said decree or judgment may be enforced by the court by execution . . . or by such order or orders as in its discretion it may from time to time deem necessary."

■ Furthermore, as we have pointed out, contempt sanctions must in any event be based only on a court order—not on an agreement of the parties. Such a court order for payment of attorney fees, to be enforceable by contempt proceedings, may be made *only* upon a showing of necessity by the applicant, and a finding of such necessity by the court. ■ As was said in *Fallon* v. *Fallon,* 86 Cal.App.2d 872, 873 [195 P.2d 878], " 'The wife seeking these awards must establish her necessity for them. Such necessity may be proved only by showing that her need for proper support and the expenses of the litigation exceed her available resources. This means that the trial judge must be informed in detail not only as to her needs . . ., but also as to her resources. . . .' " (See also *Chapman* v. *Tarentola,* 187 Cal.App.2d 22, 25-26; *Murphy* v. *Murphy,* 71 Cal.App. 389, 392 [235 P. 653]; *Pedreira* v. *Pedreira,* 32 Cal.App. 711, 717-718 [164 P. 30].) This rule has found statutory approval in Civil Code sections 137.3 (repealed effective January 1, 1970) and 4525 (operative January 1, 1970) allowing such attorney fees "as may be reasonably necessary for the cost of maintaining or defending" the action. In the instant case, since no showing of necessity was made, the court was without power to make such an order. We quote from *Murphy* v. *Murphy, supra,* p. 392: "Under no circumstances could the court allow attorneys' fees in this class of case."

■ Corienne's contention that the agreement's provision, "It is further understood and agreed that this agreement shall be effective only from and after its approval by a court of competent jurisdiction," in some way

---

[1]Civil Code section 4540, which supersedes section 139 and certain other sections, applies only to judgments, orders, or decrees "made or entered pursuant to this part" —The Family Law Act, operative January 1, 1970.

makes its provision enforceable by contempt proceedings is without merit. Nothing in the language reasonably supports such an interpretation.

■ Nor does the further provision, "The court may incorporate this agreement in the decree of divorce or annulment and make its order requiring each of the parties to perform each and all the obligations by them to be performed in accordance with the terms of this agreement," have that result. It authorizes the court to give to the agreement the force and effect of a judgment upon which execution and other permitted process —not contempt—would lie. We note that in *Bradley* v. *Superior Court, supra,* 48 Cal.2d 509, 513, the lower court had ordered that the property settlement agreement is " 'hereby approved, ratified, confirmed and adopted by the Court, and by reference made a part of this judgment and decree . . . and each of the parties is hereby ordered to carry out . . . each and all of the provisions by him or her respectively required under the terms of said agreement. . . .' " This language, it was held, did not authorize contempt sanctions.

Let the peremptory writ of prohibition issue.

Molinari, P. J., and Sims, J., concurred.