LOY v. LOY et al.—151 S. W. (2d) 178.

Eastern Section. February 15, 1941.

Petition for Certiorari Denied by Supreme Court, May 3, 1941.

Joe C. Thomason, of Knoxville, for appellants.
Jennings & O'Neil and H. F. Jarvis, all of Knoxville, for appellee.

PORTRUM, J. The plaintiff, Mary Etta Loy, filed this bill against her husband, William H. Loy, for a divorce and property settlement by way of alimony. This couple was married in 1897 and have raised a large family of children. They are now old and the husband is a semi-invalid suffering with a heart ailment and complications. They own as tenants by the entirety a small tract of about 20 acres as a home in Anderson County, Tennessee; this property came through the wife's relatives, and while it was not a gift, the husband and wife rendering some services for it, nevertheless they probably would not have acquired the property had it not belonged to kins people. The wife is a thrifty woman, tilling the soil and cultivating the crops while her husband was disabled and house ridden, and the property produced for the couple a living.

But the husband was sick, and his children having matured were living in Knoxville, some of whom were working in a mill, and the children wanted the parents to come to Knoxville and live with them in order that the father could have medical attention and be comfort-

able, while the mother would assist with the household duties while the daughters were at work in the mill. The wife agreed to move to Knoxville and into the home of their children and try this for a while, with the understanding that if she became dissatisfied they would return to the farm in a year. They moved to Knoxville and rented the small place to the defendant, John Buhl, and for a time all went well, but one of the daughters with whom they lived died, and another moved in, and the mother became dissatisfied and wanted to return to the farm. The husband was very well satisfied and declined to return to the farm, or to permit the wife to return to the farm. This condition continued for a year or two, the wife wanting to return to the farm, but the husband every year rerenting the farm to the defendant John Buhl, and the husband and Buhl together declining to permit the wife to return to her home in Anderson County. Being unable to return to her home and escape from her condition, she hired herself out at the wages of 50 cents a day and worked with strangers for her support. The husband did not strenuously object to this and so the parties by tacit agreement remained separated, the husband continuing to prevent his wife from returning to the home in Anderson County. This farm was rented to the defendant Buhl by the husband from year to year, for a grain rent, and it was agreed that Buhl would pay the rent one-half to the husband and one-half to the wife. Buhl continued to do this, recognizing the wife's interest but he guarded and protected the rent due the husband while neglecting the rent due the wife, leaving them in the field, and permitting her interest in the potatoes to freeze. And Buhl was abusive to the wife when she went upon the premises.

Finally the wife instituted this bill for divorce upon the ground of cruel and inhuman treatment; she claimed that the property came through her and that the title was wrongfully taken in her name and the name of her husband, as tenants by the entirety, and that her husband held title in trust for her. She sought in the bill to have a resulting trust established, but failing in this she asked that the property be allotted her as alimony. She made the tenant John Buhl a party defendant claiming that he was wrongfully in possession of the property without her agreement or consent, and that she was entitled to a mandatory injunction, restraining him from withholding the immediate possession of the property from her. This bill was filed in Knox County and a counterpart issued to Anderson County for the defendant Buhl. A show-cause order was issued and a hearing had upon the mandatory injunction, when the Chancellor held that the tenant was entitled to possession for his rental contract period, which expired on December 31, 1942, and he declined to issue the mandatory injunction during the rental period.

Upon the hearing, the Chancellor granted the complainant a divorce from bed and board for a period of one year, at the termination of which period he would determine her right for an absolute divorce,

and by way of alimony he granted the complainant the possession and use of the 20-acre home in Anderson County, and by injunction required the defendant Buhl to turn over the possession of the property at the end of his rental period, or on January 1, 1941, to the complainant. In the meantime the defendant Buhl had asserted by way of an amendment a rental contract to the defendant W. H. Loy, for the year 1941. The Chancellor held that Buhl was estopped to assert this contract for 1941, and further than no such contract was executed. Buhl has appealed to this court, and so has the defendant William H. Loy, who contests the wife's right for a divorce. The assignments of error deal first with the appeal of defendant Buhl and the Court will dispose of his case first.

At the outset Buhl filed a demurrer questioning the jurisdiction of the court. He said that this demurrer should have been sustained for the reasons, first, that the controversy is over the possession of title to land laying in Anderson County, the bill being filed in Knox County, and that it is a local and not a transitory action. Citing Gibson's Suits in Chancery, Sec. 177. The court had jurisdiction of the parties and could control their personal conduct through his injunctive power, so the right of possession or title to the land was only an incident. At any rate, the defendant's possession was not disturbed during his contract period and the court having jurisdiction of his person had authority to restrain him from exercising rights over the land after the expiration of his rental contract.

The second ground is that the bill shows upon its face that the complainant does not have title to the property and is not in a position to maintain an action to oust the defendant from possession, even though the action was prosecuted in the proper county. The defendant was accorded one-half the rent to the complainant and he is estopped to deny her title to the property, or that he was holding his rental contract under her. This is not an action of ejectment.

The third and fourth grounds of the demurrer raise practically the same question of title and the right of the complainant to seek possession and are answered by the answer to the second ground above.

The fifth ground of the demurrer is that the suit is a misjoinder of action and a misjoinder of parties, being an action for divorce and alimony against the defendant Loy below, in which the defendant Buhl has no interest, and an action against the defendant to oust him from the possession of real estate and to inhibit and restrain him from going upon the real estate.

This is not a misjoinder of action or a misjoinder of parties; assuming that the defendant Buhl had a valid rental contract and the land in fact belonged to his codefendant William H. Loy, the husband, nevertheless the wife had the right to subject this land to her alimony and to call in the defendant Buhl to account to her instead of to her husband Loy for the proceeds from the rental contract as alimony. Buhl has no vested right to pay the rents to

Loy, and they are under the control of the court as the property of Loy, subject to the alimony of the wife, and it is proper that the tenant be brought before the court in a suit for divorce and alimony between husband and wife, and made to account for the rent as alimony if the court so decrees. And being properly before the court and the court found that he had no rental contract for the year 1941, notwithstanding he asserted such a contract, it was proper and within the power of the court, in protecting the right of the wife for alimony, to restrain him from further retaining the property and require him to turn it over to the wife as alimony.

The Chancellor had jurisdiction of the parties and his decree was one in personam; he properly overruled the demurrer.

The next assignment of error is that the Chancellor erred in holding that the defendant Buhl was estopped from setting up the claim that he had leased the premises for a period of one year, beginning January 1, 1941.

Buhl answered this bill in August, 1940, at a time when they were trying to peremptorily oust him by a mandatory injunction, and he asserted his right to remain under his rental contract to the end of the rental period; he stated and restated his position in his answer. He stated:

"In this connection he avers that he is holding said premises pursuant to an agreement made whereby he retains said property upon a yearly basis and that he has a crop on said premises and that he is entitled to retain the title of the said premises until the end of this year particularly, and especially until such time as he will be able to harvest, preserve and keep said crop. . . . And denies that the complainant is entitled to come upon said premises until the end of the current year . . ."

And again:

"This defendant admits that prior to the beginning of this suit the complainant did come upon him and tell him he had to get off of the farm, but he informed her that he was renting it upon a year-to-year basis and that he would decline to permit her to dispossess him and take charge of said farm until the end of the crop year."

Again he said:

"It is true that the complainant, Mary Etta Loy, has made some demand on this defendant to vacate these premises. In view of the fact, however, that he was growing crops on said premises and in view of the further fact that he was in possession of said premises pursuant to an oral agreement with the said Mary Etta Loy and William Henry Loy, for the purpose of farming said premises and raising crops thereon, he has declined and refused to vacate said premises until such time as his crop year has ended and he would be entitled to gather his crops."

This case was heard upon oral testimony and during the hearing the defendant Buhl asserted that he had a contract with William

Henry Loy executed in July, 1940, for the crop year of 1941, and he sought to amend his answer to assert a right to possession of the farm for the year 1941. The Chancellor was of the opinion that the defendant had a right to amend his answer, but that upon motion the amendment ought to be stricken. However, no motion was made to strike. The Chancellor passed upon the issue and held that the defendant was judicially estopped to assert a contrary fact to that alleged in the answer. And further, that no such contract was made. He attempts to escape the declaration of his answer by stating that the contest was over the present possession of the property and that his attorney has advised him it is not necessary to make reference to his contract for 1941. In view of the repeated assertion in the answer that his rental contract expired at the end of 1940, the explanation is not clear, especially since his codefendant Loy stated in his answer that the contract expired in 1940 and he was not called as a witness to prove the execution of a new contract for the year 1941 in July, 1940. He and Buhl were friendly and his testimony was available to Buhl and even in the court room; he was not called. The presumption is that he would have sworn contrary in Buhl's interest. There are other discrepancies in the testimony discrediting Buhl, and from all the facts this court concurs in the finding of the Chancellor that no such rental contract was executed for the year 1941.

Defendant Buhl's assignments of error are overruled and the decree as to him is affirmed, and he is taxed with one-half of the cost of the appeal.

The defendant William Henry Loy assigns error to the action of the Chancellor in granting his wife a divorce upon the grounds:

"The original bill of the complainant is wholly lacking in circumstances and time and place with reference to the averments of cruel and inhuman treatment. These averments are in the most general terms, and are utterly devoid of circumstances of either time or place.

"The first allegation of cruelty and inhuman treatment appearing on page 5 of the record, from which we quote:

" 'Complainant refused to sign any kind of a deed to said premises, and as a result of her refusal to sell her farm, the defendant became enraged, cursed her and stated that 'You just married me as a slobber to hide your meanness.' . . . As a result of the abuse and unjustified remark upon complainant she was forced to and did withdraw to the home of her sister, Mrs. F. A. Foust, who lived in Knoxville, and since said date she has not lived with the defendant, who has continued to make his home with his daughter.'

"And further reference to cursing and abusing the complainant is on page 6 of the record, from which we quote:

" 'The defendant has kept matters secret from the complainant, and as hereinabove averred, he did not tell her that title to the Union County property was taken in his name alone, and he has denied her

the necessities of life, has abused and cursed her without any cause or justification.' "

And she charges cruel and inhuman treatment in the language of the statute but again without circumstances of the time and place, to quote:

"Complainant shows to the court that the defendant has repeatedly been guilty of such cruel and inhuman treatment and conduct towards her as renders it unsafe and improper for her to cohabit with him and be under his dominion and control; that he has offered such indignities to her person as to render her condition intolerable and has thereby forced her to withdraw."

Complainant's proof of cruelty is as follows:

"What did he say when you told him you wouldn't sell? A. He said, 'You just married me for a slobber to hide your meanness.'

"Q. Did you have words there? A. He talked and preached and talked and preached, and I can't remember what all he said or what I said."

It is said in argument that an intelligent mind would understand the insinuation from "You just married me for a slobber to hide your meanness," and it is argued that this remark is of such cruel and inhuman treatment as justifies a divorce. The court does not know what it means, and the complainant did not tell the court what she thought it meant. She did not say that she was humiliated by it or that she thought it was a reflection upon her character. She explains it by saying "He talked and preached and talked and preached, and I can't remember what all he said or what I said." And she testifies that her husband had cursed her.

"O. Did Mr. Loy ever curse you? A. Yes, he has in time.

"Q. Explain to the court when and where he has cursed you, and what he called you and what he said. A. He has cursed me dozens and dozens of times. He cursed me and abused me when I was working and trying to wait on my uncle and aunt, because I wouldn't go there and work and wait on them for that home."

(The waiting on the uncle and aunt occurred early in their married life and it is through them she claims the home.)

"Q. What about recently, since you came from Anderson County? A. The last time was when I went over there to get my few rags, what I had, and he said, 'damn it, I wish you would come on back home and stay where you ought to.' "

Mrs. Loy's sister was introduced to corroborate her testimony and was asked:

"Q. Did you ever hear Mr. Loy curse the complainant? A. Not just to say curse her. I just heard him flout her; she could not talk without him contradicting her."

The Chancellor deciding this case said:

"The only evidence of—not the only evidence, but the most evidence of—grounds (for divorce) in this record is the treatment that

the renter has given to the complainant with apparently not only the consent of the defendant Loy but with his acquiescence or maybe even more than that. The defendant Loy is sick and incapable of working. He is older than the complainant. There is very little evidence of mistreatment here between these two married people. The complainant has more temper and health and is high-strung, and I think it is a blessing to the defendant Loy that he has a disposition where he can take life easy because excitement won't be good for him."

■ It is not sufficient to charge the grounds set out in the statute (Code, sec. 8427); you must charge the time, place and circumstances and from these facts it must be determined if the conduct is cruel and inhuman as defined by the statute. We think the allegations of this bill are lacking as to circumstances of time and place. There is no specific charge giving the defendant notice as to what he is called upon to answer.

■ ■ In the absence of specific charges giving time and place with sufficient definiteness to enable the defendant to meet and defend the charge, the statute is not complied with. Beard v. Beard, 3 Tenn. App., 392. And the proof is insufficient to sustain the charges had they been more definite. It appears that the defendant swears, but the wife also swears, and there is nothing to indicate that she is shocked by the oaths of her husband. There is no proof here that he cursed the wife, other than her conclusion of what happened years ago, and when she was asked to detail the conversation when he cursed her she said he told her "Damn it, you ought to come on home where you belong.

■ The allegation of cruelty must show an element of physical unsafety, danger or indignity along with other elements. Saillard v. Saillard, 2 Tenn. Ch. App., 396.

There is no element of danger established in this record or indignities. The husband is a sick man, the wife is greatly annoyed because she can't return to her home in Anderson County due to the connivance of the husband with the tenant upon the farm. She wants to go back to her home and he doesn't; and she has decided if she can't go back to her home she will hire out and remain away from her husband. He wants her "Damn it, to come back." She wants him to go to the farm with her. Here is the bone of contention. He stated that if she would let him alone he would go back to the farm with her the first of the year. She states that he could come back with her to the farm and they would live together.

■ The court is not justified in granting a divorce to the wife because her husband will not consent to her returning to the farm. The court can remedy this situation without going to the extent of granting a divorce. The husband owes a legal duty to support his

wife, and the court can make provision for her out of the property of the husband without reference to a divorce.

 The court of equity may decree a separate maintenance to the wife though the husband's dereliction or neglect causing the wife to live apart from him was not such as to justify a decree for divorce. Chapman v. Chapman, 3 Tenn. Civ. App., 3; Cureton v. Cureton, 117 Tenn., 103, 96 S. W., 608.

Acting under this authority this court affirms the decree of the Chancellor, making provision for the wife, pending a final disposition of the divorce from bed and board; in other words, the decree for a divorce from bed and board is reversed, and the suit as for divorce is dismissed, but it is maintained as one for alimony and maintenance, and the disposition of the property as fixed by the Chancellor is continued and the case remanded to the lower court to be there retained upon the docket for future orders and decrees in reference to alimony and maintenance. The wife expressed a willingness that the husband can return to the home in Anderson County, and if he does and is refused admittance, then he may make application for a modification of the decree turning the entire home over to the wife so as to require the wife to make some contribution to the husband from the proceeds of the farm in case she will not permit him to return. A decree will be entered here setting out the holding of the court as above indicated, and the case remanded to the lower court for future orders. One-half the cost of the appeal is taxed against the husband and wife, that is each will pay one-fourth the cost of the appeal.

## On Petition to Rehear.

This case was decided on February 15, 1941, by this court, reversing the case as to the divorce granted the wife, but affirming the Chancellor in his disposition in providing the wife with alimony by decreeing to her the immediate possession of the small tract of land in Anderson County in which the title was in her and her husband by the entirety. The husband has filed a petition to rehear running in the name of the defendants, but only specifying two grounds for a rehearing and a modification of the decree of this court. They are designated ''(a)'' and ''(b),'' and are as follows:

''(a) The court has taken all the property of the defendant William Henry Loy, and awarded the same to the complainant, Mary Etta Loy, as alimony, while the defendant is in bad health and unable to work and support himself, and the complainant, Mary Etta Loy, is able-bodied, in good health, and capable and able of supporting herself;

''(b) Because the court, by its opinion, deprived the defendant Loy of his present interest in real estate, held by himself and his wife as tenants by the entirety.''

The court in its opinion and decree provided that the husband and wife should have equal rights in the small home place and the possession if the husband elected to avail himself of this possession; and the order provided that the Chancery Court will maintain the case upon the docket that he might protect his right to the property. We think that the disposition of the possession of this property is equitable and just.

The court did not deprive defendant Loy of his present interest in the real estate; he still owns the legal title by the entirety with his wife, and the title was in no way disturbed; only the right to the possession was disposed of. It is not necessary to decide whether a court of equity can sever the estate held by the entirety, since no attempt was made to do this.

The petition ends with this prayer:

"It is, therefore, most urgently insisted that a rehearing be granted to the defendant, William Henry Loy, and that the award of alimony be set aside, and that his present interest in the Anderson County farm be restored to him."

There is no relief sought for the co-defendant, John Buhl. The decree was adverse to him, holding that he had no rental contract for the year 1941 and was not entitled to continue his possession. The petition to rehear did not suspend the decree in reference to the defendant John Buhl, pending its disposal. The opinion disposed of the defendant Buhl's assignment of error and the case as to him became final, unless he asked for a rehearing upon his assignments of error and this he failed to do. We think after the expiration of thirty days from the entry of the decree, the decree as to Buhl was final, and the clerk was within his right to issue a procedendo to the Chancery Court in order that the decree may be executed as to Buhl. The motion to recall the procedendo is denied. The petition for a rehearing is denied for the reasons hereinbefore stated.

Ailor and McAmis, JJ., concur.