CRENSHAW, Respondent, *v.* CRENSHAW, Appellant.

No. 8697

Submitted April 2, 1947. Decided June 7, 1947.

182 Pac. (2d) 477

Mr. E. F. Bunker, of Bozeman, for appellant. Mr. Bunker argued the cause orally.

Mr. E. A. Peterson, of Bozeman, for respondent. Mr. Peterson argued the cause orally.

MR. CHIEF JUSTICE ADAIR, delivered the opinion of the Court.

On August 11, 1944, the plaintiff Rose Crenshaw commenced this action against her husband, the defendant Benton M. Crenshaw, for the purpose of obtaining a decree of separate maintenance.

The complaint does not state a cause of action for divorce nor does the prayer thereof seek a decree of divorce. The complaint, which has never been amended, charges that the defendant did wilfully ''desert and abandon the plaintiff'' thirteen days before suit was commenced and ''prays judgment for a decree of separate maintenance herein.''

Defendant answered, denying the charge of desertion and, by cross-complaint, sought a decree of divorce on the ground of extreme cruelty. By reply the plaintiff denied the allegations charging her with extreme cruelty and, by a so-called ''Cross-Complaint to Defendant's Cross-Complaint,'' she charged the defendant with extreme cruelty and prayed for a decree either of separate maintenance or of divorce.

The cause was tried to the court without a jury and judgment and decree given and entered awarding the plaintiff, Rose Crenshaw, an absolute divorce and the sum of $12,000 ''as an allowance and as an alimony out of the estate of the defendant, said sum to be paid in 96 monthly installments, each in the sum of One Hundred and Twenty-five Dollars'' and that defendant give and execute to the plaintiff a mortgage on his real and personal property to secure to her the payment of said principal sum of $12,000 and that defendant continue to pay $125 per month ''to plaintiff commencing January 15,

1946, and on or before the 15th day of each and every month thereafter until further order of this Court.''

From such judgment and decree the defendant has appealed.

*The Facts.* In 1929 the parties intermarried at Livingston, Montana. The husband, a building contractor, then owned five or six houses in Livingston on which there was a mortgage, while his wife's property consisted only of savings in the amount of $1,600.

In 1932 the parties moved to Bozeman, Montana, where the husband purchased a duplex house known as No. 908 South Grand street. Thereafter he built two houses on Tracy street in Bozeman, toward the cost of which his wife contributed about $1,000 from her aforesaid savings and the balance thereof, amounting to $500 or $600, she invested in stock in a building and loan company.

In 1937 the husband purchased from the county of Gallatin the Bozeman Y. M. C. A. building and property to which the county had acquired tax title. To obtain the money for this purchase Mr. Crenshaw borrowed $2,500 giving as security therefor a mortgage on the duplex house at No. 908 South Grand street, which mortgage was executed by both the husband and wife.

Mr. Crenshaw, with the assistance of a crew of men, remodeled the Y. M. C. A. building into an apartment house which he called The Crenshaw Apartments, financing the enterprise through a loan of $45,000 obtained from the Reconstruction Finance Corporation, a federal lending agency, to secure the payment of which he and his wife executed and delivered to the lending corporation an assignment of the rents and a real estate mortgage on the apartment building which, when remodeled, contained twenty-eight newly equipped, modern apartments capable of accommodating about a hundred persons.

In June, 1940, Crenshaw and his wife moved into the building, occupying apartment No. 13 thereof as both an office and living quarters. That year Mr. Crenshaw suffered a leg in-

jury which incapacitated him for about six months during which time a man was hired to perform the miscellaneous tasks about the building, including the stoking of the furnace, while Mrs. Crenshaw acted as manager of the apartment house to March, 1941, at which time Mr. Crenshaw again took over its management.

Later, during the year 1941, Mr. Crenshaw undertook a job in Park county, Montana which kept him away from home except during the week-ends which he spent with his wife.

From May, 1942, to December, 1942, Mr. Crenshaw was engaged in war work at Camp Farragut in the state of Idaho, except for three or four days in November when he returned to Bozeman and installed the storm windows on the apartment building. Upon the completion of his job at Camp Farragut Mr. Crenshaw returned to his home in Bozeman where he remained until August, 1943.

From August 10, 1943, to the end of the year Mr. Crenshaw engaged in war work at Kennewick, Washington.

During the time that Mr. Crenshaw's work kept him away from Bozeman his wife managed The Crenshaw Apartments, collecting the rentals therefrom and accounting for same to Mr. Charles H. Bell as agent for the assignee, Reconstruction Finance Corporation.

Upon the completion of his work in Kennewick the husband returned home and in July, 1944, proceeded to resume the management of his apartment building.

*Authority of the Husband.* The wife questioned the authority of her husband to resume the management of the property, the title of which then stood and still stands of record in his name. Not only did the wife question her husband's authority to manage the building wherein both resided, but she also vigorously contested his right to collect the rents due from the various tenants of the building. Confusion resulted from this contest—defendant's house became divided against itself— the tenants did not know to whom the rents should be paid— the rentals for July and August, 1944, were collected in part

by the husband and in part by the wife. The contest over the right to receive the rental moneys was won by the husband and, since August, 1944, *all* of the rentals from the apartments have been collected by the husband *alone* and by *him* accounted for to the assignee, Reconstruction Finance Corporation.

It is the law that, "The husband, unless incapacitated from executing the authority and performing the duty, is head of the family. This is so, not only at common law, but under the Married Women's Acts. It is not the purpose of these acts to depose the husband from the position given him by the common law as the head of the family. It is necessary to the unity and preservation of the family, which is regarded as the basis of the state, to have a single head with control and power, and the husband is made that head and, in return, is made responsible for the maintenance and, at common law, for the conduct of his wife. Such fundamental authority is necessary to his duty to protect and provide for his wife and children. The authority of the husband as the head of the family gives him the right, acting reasonably, to direct the family's affairs and to determine where and what the home of the family shall be, and thus, to establish the matrimonial and family domicile. * * * She [the wife] is under duty to submit to such reasonable goverance of the family by the husband." 26 Am. Jur., "Husband and Wife," pp. 638, 639, sec. 10.

Family government is recognized by law as being as complete in itself as the state government is in itself. Every household has and must have a government of its own modeled to suit the temper and disposition of its inmates. State v. Rhodes, 61 N. C. 453, 98 Am. Dec. 78. Courts do not go behind the family curtain and scrutinize too nicely every family difference and disturbance in order to find that an assault has been committed.

When the defendant, Benton M. Crenshaw, in July, 1944, took over as the managing head of The Crenshaw Apartments, then also the home of himself and wife, he was but exercising

a *right* which the law expressly recognizes that he possesses as the head of his family. "The husband is the head of the family. He may choose any reasonable place or mode of living, *and the wife must conform thereto."* Sec. 5783, Rev. Codes of Montana 1935. Emphasis ours.

*The Complaint.* The complaint recites the marriage and residence of the parties; that there is no living issue of the marriage; that the parties own The Crenshaw Apartments upon which there is an outstanding mortgage; that since 1940 "plaintiff has applied herself assiduously to *the management of said apartment house";* that the parties "have maintained their home in apartment 13 on said premises, where they have lived and where *plaintiff has maintained an office from which she has conducted the affairs of said apartment house";* that since the 29th day of July, 1944, "defendant has wilfully prevented plaintiff from attending to her duties *in connection with the operation of said apartment house";* that "plaintiff has demanded of defendant that he cease to exclude her from her home and *her place in the management of said property,* but defendant has refused and still refuses such demand." As ground for seeking a decree of separate maintenance the complaint alleges: "IV. That on the 29th day of July, 1944, the defendant herein, disregarded the solemnity of his marriage vows and duties to the plaintiff as her husband, and wilfully and wrongfully and without any cause or provocation on the part of the plaintiff, did desert and abandon the plaintiff and at all times since said date the defendant has continued and still does continue to wilfully desert and abandon said plaintiff and to live separate and apart from her, all of which was done by said defendant against plaintiff's will and without her consent and without any cause or provocation whatsoever for so doing."

The complaint "prays judgment for a decree of separate maintenance herein and for an order restraining defendant from ejecting plaintiff from the above described property and from interfering with plaintiff's right of ingress and egress

therefrom; that defendant be required to provide a separate apartment for plaintiff in said apartment house and otherwise provide for her separate maintenance; that defendant pay into Court a reasonable attorney fee, suit money and a reasonable allowance for plaintiff's support during the pendency of this action; and a like sum for her permanent maintenance thereafter, and that plaintiff have such further relief as may be just and equitable."

*Demurrer to Complaint.* To such complaint the defendant, on August 30, 1944, interposed a demurrer.

*Answer and Cross-Complaint.* On January 18, 1945, the defendant husband filed an answer denying the charge that he had deserted his wife and, by cross-complaint, sought a decree of absolute divorce on the ground of "extreme cruelty" allegedly to have existed "for more than one year last past and immediately preceding the commencement of this action."

*Demurrer to Answer and Cross-Complaint.* On January 26, 1945, the plaintiff wife interposed a demurrer to her husband's answer and cross-complaint.

*Reply to Defendant's Answer.* On March 20, 1945, the plaintiff filed a reply to defendant's answer, which reply is in four parts. The first part is a general denial of defendant's answer. The second part is a general denial of defendant's cross-complaint. The third part of her reply plaintiff captioned as, "Further Answering and by way of Separate Defense to said Cross Complaint and setting up matter by way of recrimination to bar Divorce on Defendant's Cross-Complaint."

The fourth part of plaintiff's reply is designated "As a Further and Separate Defense, Counterclaim and by way of Cross-Complaint to Defendant's Cross-Complaint," wherein plaintiff charges that the defendant has been guilty of extreme cruelty in that he has inflicted grevious and bodily injury and mental suffering upon her "by pursuing such a course of conduct toward her and such treatment of her, existing in and persisted in for more than one year immediately preceding the

commencement of this action, which justly and reasonably is of such a nature and character as to destroy the peace of mind and happiness of the Plaintiff." The relief prayed for is "that Plaintiff have judgment as prayed for herein, either for separate maintenance as alleged in the Complaint or a decree of Divorce as set forth in Plaintiff's Cross-Complaint to the Cross-Complaint of the Defendants."

*Defendant's Reply to Plaintiff's Reply.* On March 30, 1945, the defendant filed a paper designated as "Reply to 'Reply to Defendant's Answer and Answer to Defendant's Cross-Complaint and Plaintiff's Counterclaim'," denying the allegations of plaintiff's reply and concluding with the prayer that, "the defendant again prays that the plaintiff take nothing by her action, and that the defendant do have and be granted a decree of divorce against the plaintiff."

*Plaintiff's Demurrer to Defendant's Reply.* On April 19, 1945, the plaintiff filed a paper designated as, "Plaintiff's Demurrer to Defendant's Reply, and Plaintiff's Demurrer to Defendant's Answer to Plaintiff's Cross-Complaint and Counterclaim."

*Plaintiff's Reply to Defendant's Answer to Plaintiff's Cross-Complaint and Counterclaim.* On May 28, 1945, plaintiff filed a paper designated as, "Plaintiff's Reply to Defendant's Answer to Plaintiff's Cross-Complaint and Counterclaim," denying the allegations of defendant's so-called "Answer to Plaintiff's Cross-Complaint and Counterclaim."

The record herein discloses a complete disregard of the statutes and rules governing Code pleading.

Section 9127, Revised Codes, as amended by Chapter 8, Laws of 1937, particularly specifies the pleadings and the only pleadings that are allowed on the part of the plaintiff and the defendant in a lawsuit.

Section 9158, Revised Codes, specifies what a reply may contain and the manner in which such matter may be alleged.

Thornton v. Kaufman, 35 Mont. 181, 88 Pac. 796, 797, announces the rule "that under the rules of pleading the repli-

cation is responsive to the new matter or counterclaim alleged in the answer, and, while its allegations may in a particular instance aid the answer, *they may not in any case aid the complaint*. This was the rule at the common law, as it is also under the Code." (Emphasis ours.) McCarthy v. Employers' Fire Ins. Co., 97 Mont. 540, 37 Pac. (2d) 579, 583, 97 A. L. R. 292, holds "*that the reply cannot aid the complaint by supplying omissions therein or broadening its scope by adding new grounds of relief, or permit the plaintiff to take a position inconsistent with that taken in the complaint.*"

As was said by this court in the recent case of State ex rel. Barron v. District Court, Mont., 174 Pac. (2d) 809, 813:

"It seems clear that the plaintiff's so-called cross-complaint, included in his reply, is not a pleading permitted by statute, and is unwarranted under the provisions of section 9158. Its allegations do not constitute a defense to the new matter found in defendants' answer, and are not responsive thereto, but attempt to broaden the scope of the complaint by adding a new ground for relief. It seeks to become the basis of an entirely new claim for recovery. * * *

"It may be that the attempted cause of action might properly have been included in the original complaint, or its inclusion therein effected by amendment. But it may not be properly included in the reply. If it were otherwise, it is difficult to perceive an end of the process of joining the issues in any cause." Compare: Gasior v. Gasior, 67 Ohio App. 84, 87, 35 N. E. (2d) 1021.

Clearly the allegations of plaintiff's reply may not aid her complaint herein. Thorton v. Kaufman, supra; State ex rel. Barron v. District Court, supra.

The defendant urges that the trial court erred in finding, "That defendant willfully deserted and abandoned plaintiff July 12, 1944, while plaintiff and defendant were living in the Crenshaw Apartments, Bozeman." Neither the facts nor the law sustain the finding. Wilful desertion from July 12, 1944, to August 11, 1944, being a period of *thirty-one days,*

even if proven, does not constitute a ground for divorce. Such desertion "must continue for the space of one year before there is ground for divorce." Sec. 5749, Rev. Codes 1935.

It is elementary that the complaint must support the judgment, and the question whether it does or not can be raised in the Supreme Court for the first time. Foster v. Wilson, 5 Mont. 53, 57, 2 Pac. 310.

The complaint herein charges wilful desertion of but *thirteen* days' duration, the allegation being that "on the 29th day of July, 1944, the defendant * * * did desert and abandon the plaintiff." Under the Code system of pleading a plaintiff may not recover beyond the case stated by him in his complaint. Kramlich v. Tullock, 84 Mont. 601, 608, 277 Pac. 411. Clearly the complaint sustains neither the decree granting an absolute divorce nor the money judgment awarding plaintiff the sum of $12,000 "as an allowance and as alimony out of the estate of the defendant." Decker v. Decker, 56 Mont. 338, 185 Pac. 168; Boggs v. Boggs, Mont., 1947, 177 Pac. (2d) 869. A judgment rendered on a case not *stated* is *coram non judice,* though rendered by a court having jurisdiction of the subject matter and of the parties.

Plaintiff urges that even though her complaint fails to support the decree and judgment, nevertheless they should be sustained upon other and substantially different grounds alleged in her so-called "Cross-Complaint to Defendant's Cross-Complaint." This the law does not permit.

"The plaintiff must, of course, stand or fall upon the cause of action stated in his complaint. Pierce v. Great Falls & Canada Ry Co., 22 Mont. 445, 56 Pac. 867. He is required to state his cause in ordinary and concise language. (Section 9129, Subd. 2, Rev. Codes 1921.) The facts must be 'stated by direct averment so that the party who is to answer may understand the specific acts of remissness with which he is charged and that material issues may be framed for trial.' Stricklin v. Chicago, M. & St. P. Ry. Co.; 59 Mont. 367, 197 Pac. 839, 840. The pleader must confine his proofs within the cause

of action he states; he may not go beyond the material allegations of his pleading, for it would be folly to require the plaintiff to state his cause of action, if in the trial he could abandon the grounds stated and recover upon others which are substantially different from those alleged. Forsell v. Pittsburgh & Montana Copper Co., 38 Mont. 403, 100 Pac. 218. If this were not so, the very purpose of pleadings would be destroyed, and, instead of the complaint apprising the defendant of the proof which he would be called upon to meet, it would become a device to entrap him. Flaherty v. Butte Elec. R. Co., 40 Mont. 454, 107 Pac. 416, 135 Am. St. Rep. 630.'' Kakos v. Byram, 88 Mont. 309, 318, 292 Pac. 909, 911. See also to same effect: West v. Wilson, 90 Mont. 522, 4 Pac. (2d) 469; Giles v. Herstein, 43 N. M. 518, 96 Pac. (2d) 289.

There is in this state but one form of civil action. Sec. 9008, ▮▮▮ Rev. Codes. A suit for divorce is a civil action and the pleadings in it are to be construed by the ordinary laws governing civil actions. Callen v. Callen, 44 Kan. 370, 373, 24 Pac. 360, 361. ''Pleadings in such actions must be so framed as to entitle the pleader to the remedy he seeks, and accurate pleading should be demanded before the marriage relation is dissolved.'' 27 C. J. S., Divorce, sec. 104, p. 692. The *facts* should be fairly and reasonably stated in the *complaint* so that the defendant may be clearly and fully apprised of the plaintiff's claim. Callen v. Callen, supra.

It is elementary that proof without pleadings will not sustain a decree. The rule is as stated in Gibson's Suits in Chancery, 4th. Ed., sec. 142, namely: ''Every fact essential to the complainant's title to maintain the bill, and obtain the relief, must be stated in the bill, otherwise the defect will be fatal. For no facts are properly in issue unless charged in the bill; and of course no proofs can generally be offered of facts not in the bill; nor can relief be granted for matters not charged; although they may be apparent from evidence; for *the Court pronounces its decrees secundum allegata et probata.* The reason of this is, that the defendant may be ap-

prised by the bill what the charges and allegations are against which he is to prepare his defense. If the rule were otherwise, the defendant would not only not know what charges he would be required to meet, but the complainant, by thus failing to inform the defendant, would be taking advantage of his own wrong. Besides, the Court has no jurisdiction of any matter not contained in the pleadings; and if the Chancellor should assume to make an adjudication not justified by the pleadings, his decree would be coram non judice, and void on the face of the proceedings; and this would be so, even though the facts proved would have abundantly supported the decree had there been pleadings justifying the proof." (Emphasis ours.)

In Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637, 638, the court said: "Public policy requires that no divorce be granted except upon the grounds provided by law, and these grounds must not only be proven, but they must be alleged in the bill. * * * This court is committed to the doctrine that, although the complainant may make out by proof a case which entitles him to relief, yet he can have no decree unless the allegations of the bill are adapted to the case proved, for the court pronounces its decree *secundum allegata et probata.*"

In her so-called "Cross-Complaint to Defendant's Cross-Complaint" plaintiff attempts to plead a cause of action for divorce based upon extreme cruelty.

"Extreme cruelty" as a ground for divorce is defined by section 5738, Revised Codes 1935. Under such definition, extreme cruelty may consist of three classes of *facts,* namely: *The facts* may show: (1) The infliction, or threat of grievous bodily injury, or of bodily injury dangerous to life, or the repeated infliction or threat of bodily injury or personal violence upon the other party by one party to the marriage; or (2) where the wife is the plaintiff, the repeated publication or utterance of false charges against the chastity of the wife by the husband; or (3) the infliction of grievous mental suffering upon the other by one party to the marriage, by a course of conduct toward or treatment of one party to

the marriage by the other, existing and persisted in for a period of one year before the commencement of the action for divorce, which justly and reasonably is of such a nature and character as so to destroy the peace of mind and happiness of the injured party, or entirely to defeat the proper and legitimate objects of marriage, or to render the continuance of the married relation between the parties perpetually unreasonable or intolerable to the injured party. Putnam v. Putnam, 86 Mont. 135, 282 Pac. 855; Bickford v. Bickford, 94 Mont. 314, 318, 22 Pac. (2d) 306; Argenbright v. Argenbright, 110 Mont. 379, 101 Pac. (2d) 62.

The plaintiff relies upon the third class of facts enumerated ▮▮▮ in section 5738, Revised Codes, which this court has heretofore termed "grievous mental suffering." Putnam v. Putnam, supra [86 Mont. 135, 282 Pac. 858]. Before "grievous mental suffering" may be relied upon as a ground of divorce the pleadings must allege and the evidence must show the conduct toward or the treatment of the injured spouse of which complaint is made, to have been "existing and persisted in for a period of one (1) year before the commencement of the action for divorce." Sec. 5738, supra.

The statute requires that the complaint in an action must ▮▮ ▮▮ contain a statement of *the facts* constituting the cause of action. Sec. 9129, Rev. Codes. Whatever may be the nature of the cause of action upon which a plaintiff seeks to recover, he must allege in his complaint *facts* disclosing the presence of all the elements necessary to make it out. Chealey v. Purdy, 54 Mont. 489, 491, 171 Pac. 926. The necessity for a statement of *the facts* constituting the cause of action is not obviated by a statement of the mere *conclusions* of the pleader. *Conclusions* are not issuable. They need not be denied for their denial raises no issue whatever as to the facts. They will be deemed surplusage and, as such, will be disregarded by the court in considering the sufficiency of a pleading. Freisheimer v. Missoula Creamery Co., 64 Mont. 443, 210 Pac. 329; Boley v. Griswold, 2 Mont. 447, 450; Johnson v. Herring, 89

Mont. 156, 295 Pac. 1100; Ryan v. Ryan, 111 Mont. 104, 106 Pac. (2d) 337; Coldwater v. State Highway Commission, Mont., 1945, 162 Pac. (2d) 772.

The defendant in an action for divorce is entitled to demur ▇▇ ▇▇ to the complaint and to have the judgment of the court, whether *the facts* charged in the complaint constitute offenses in law, before he can be compelled to proceed to trial on these *facts* so alleged. This right would be wholly unavailing if a general charge in the language of the statute defining the offense or by way of the conclusions of the pleader without further specifications would be sufficient to admit evidence of particular facts to substantiate the charge. Wright v. Wright, 3 Tex. 168, 181, 182; Swartz v. Swartz, Tex. Civ. App., 76 S. W. (2d) 1071. As stated in 27 C. J. S., Divorce, sec. 108, subsec. c., p. 698: ''Cruelty or extreme cruelty within the meaning of the statute must, of course, be alleged where a divorce is sought on this ground, but an allegation that defendant has been guilty of cruelty or extreme cruelty in the language of the statute generally is not sufficient; the particular facts relied on as constituting the cruelty should be set forth in detail, unless it is otherwise provided by statute.'' In this state there is no statute relieving the pleader of the duty to set forth in his complaint a statement of *the facts* constituting the cause of action as is required by section 9129, Revised Codes of 1935.

In violation of the statutory requirements and rules governing pleading the plaintiff, in her so-called cross-complaint, has attempted to charge the defendant with extreme cruelty in the language of the statute defining such ground (sec. 5738) and also by indefinite general charges and conclusions as follows:

''IV. That since said marriage, the Defendant has been guilty, of extreme cruelty, in that said Defendant has inflicted grievous and bodily injury, and mental suffering upon the Plaintiff by pursuing such a course of conduct toward her and such treatment of her, existing in and persisted in for

more than one year immediately preceding the commencement of this action, which justly and reasonably is of such a nature and character as to destroy the peace of mind and happiness of the Plaintiff and to entirely defeat the proper and legitimate objects of marriage, and to render the continuance of the married relation between the Plaintiff and the Defendant perpetually unreasonable and intolerable. That in part, such conduct and treatment is as follows:

"That since said marriage and particularly during the past five years, Defendant has been rough, tough, overbearing, cruel, brutal, and neglectful in his treatment of the Plaintiff; that he has nagged her and found fault with her in many things she has done; that Defendant cannot write intelligibly and during their married life, Plaintiff has had to be the bookkeeper, auditor, and letter writer for the Defendant in his various transactions. During all said time, Plaintiff has tried to reason with Defendant, but when she has done so, Defendant has raged and become violent. That Defendant is cunning and in public can act like a gentleman, but in private, Defendant, in his treatment toward Plaintiff, has acted like a 'hell cat.' That all through the transactions concerning the acquiring of the Crenshaw Apartment House property and during the period of time from 1937 to this date, Plaintiff has assisted Defendant assiduously in the purchase, improvement and remodeling of said property and in the financing and managing of the same; much of which time Defendant has been away and left to Plaintiff the sole responsibility of said property. That despite the careful considerations which Plaintiff has given said property, Defendant has found fault with her and has never treated her with respect and consideration which a husband should treat a wife. * * *

"That Defendant by his mean and uncouth attitude as aforesaid, has annoyed and irritated Plaintiff and has caused her to worry and become nervous, to lose sleep and to become impaired in health.

"That Plaintiff has remonstrated with Defendant and

has endeavored to have him treat her as a husband should treat a wife, but he has failed and refused to do so. That Plaintiff can no longer live with Defendant as his wife, and that by reason of the treatment of the Plaintiff by the Defendant, there is no love or affection between Plaintiff and the Defendant and the continuance of the marriage relation between the Defendant and the Plaintiff is intolerable to the Plaintiff.''

The averment or recital of a series of mere legal conclusions is ineffective for any purpose as a pleading. Ridpath v. Heller, 46 Mont. 586, 589, 129 Pac. 1054; Clark v. Demers, 78 Mont. 287, 291, 254 Pac. 162. Such conclusions of the pleader amount to nothing and have been condemned whenever they have been properly brought to the attention of the courts. Johnson v. Herring, supra.

The plain mandate of the statute is that the complaint *must contain* a statement *of the facts* constituting the cause of action. Sec. 9129, Rev. Codes 1935. To state a cause of action for divorce on the grounds of extreme cruelty it is indispensable that the complaint disclose *the facts* from which the conclusion can be drawn by the court that the defendant, by a course of conduct toward or treatment of the plaintiff, is guilty of the character and degree of extreme cruelty that is defined in and condemned by section 5738, Revised Codes.

''The acts of cruelty relied on must be specifically stated in the bill of complaint (Dashback v. Dashback, 62 Mich. 322, 28 N. W. 812), and must be supported by competent proof before a decree of divorce can be granted. Le Blanc v. Le Blanc, 228 Mich. 74, 199 N. W. 601.'' De Vuist v. De Vuist, 228 Mich. 454, 199 N. W. 229, 231.

''It is not sufficient to charge the grounds set out in the statute (Code, sec. 8427) ; you must charge the time, place and circumstances and from these facts it must be determined if the conduct is cruel and inhuman as defined by the statute. * * * There is no specific charge giving the defendant notice as to what he is called upon to answer.

''In the absence of specific charges giving time and place

with sufficient definiteness to enable the defendant to meet and defend the charge, the statute is not complied with." Loy v. Loy, 25 Tenn. App. 99, 151 S. W. (2d) 178, 183. See also Walldren v. Walldren, 187 Ark. 1077, 63 S. W. (2d) 845; Nielsen v. Nielsen, 55 Nev. 425, 38 Pac. (2d) 663; Benson v. Benson, 45 Utah 514, 146 Pac. 564; Zartarian v. Zartarian, 47 Cal. App. 90, 190 Pac. 196; Pedreira v. Pedreira, 32 Cal. App. 711, 164 Pac. 30; Smith v. Smith, 124 Cal. 651, 57 Pac. 573; Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637; Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Cottingham v. Cottingham, 155 Ga. 460, 117 S. E. 376; Bowen v. Bowen, 219 Iowa 550, 258 N. W. 882; Winterburg v. Winterburg, 52 Kan. 406, 34 Pac. 971; Tabers v. Tabers, 195 Ky. 596, 242 S. W. 584; Keir v. Digby, 166 La. 92, 116 So. 711; Brewer v. Brewer, 198 N. C. 669, 153 S. E. 163; Carnes v. Carnes, 204 N. C. 636, 169 S. E. 222; Lawrence v. Lawrence, 226 N. C. 624, 39 S. E. (2d) 807; De Lisi v. De Lisi, 139 Pa. Super. 440, 12 A. (2d) 468; Clardy v. Clardy, 23 Tenn. App. 608, 136 S. W. (2d) 526; Swartz v. Swartz, Tex. Civ. App., 76 S. W. (2d) 1071; Griffin v. Griffin, 183 Va. 443, 32 S. E. (2d) 700.

Separate and apart from these authorities and as a matter of elementary principles, "it is a part of the alphabet of the law that the pleadings must state facts, and not conclusions." Callen v. Callen, supra [44 Kan. 370, 24 Pac. 361]. See also sec. 9129, Rev. Codes; Hensen v. Merton, 57 Mont. 231, 187 Pac. 1017; Pullen v. City of Butte, 38 Mont. 194, 99 Pac. 290, 21 L. R. A., N. S., 42; McEnaney v. City of Butte, 43 Mont. 526, 117 Pac. 893; Fusselman v. Yellowstone Valley Land &. Irr. Co., 53 Mont. 254, 163 Pac. 473, Ann. Cas. 1918B, 420; Boyle v. Chicago, M. &. St. P. Ry. Co., 60 Mont. 453, 199 Pac. 283; Johnson v. Herring, supra; Linney v. Chicago, M. &. St. P. Ry. Co., 94 Mont. 229, 21 Pac. (2d) 1101.

Not only did plaintiff plead conclusions rather than the ▮▮▮ ultimate facts on which such conclusions were based but she testified to such conclusions rather than detailing the acts and words of her husband upon which she relies as tending

to prove the infliction upon her of grievous mental suffering by a course of conduct toward or treatment of her by defendant existing and persisted in for a period of one year before August 11, 1944.

In an attempt to prove her case plaintiff answered "Yes" to a question asked by her counsel on direct examination, which question neither set forth any fact nor called for any fact but only the bald legal conclusion of the witness, as follows: "Q. Mrs. Crenshaw, in your case for divorce you allege that the defendant has been guilty of extreme cruelty in that the defendant has inflicted grievous bodily injury and mental suffering upon the plaintiff by pursuing such a course of conduct toward her and such treatment of her, existing and persisted in for a period of more than one year immediately preceding the commencement of this action which justly and reasonably is of such a nature and character to destroy the peace of mind and happiness of the plaintiff and to entirely defeat the proper and legitimate objects of marriage and to render the continuance of the marriage relation between the plaintiff and the defendant perpetually unreasonable and intolerable. Is that a fact? A. Yes."

A plaintiff in an action for divorce grounded on extreme cruelty does not meet the requirements of subdivision 2 of section 9129, Revised Codes, by simply alleging "My husband, the defendant, did violate the provisions of section 5738, Revised Codes of Montana" nor may she prove her case by taking the witness stand and stating under oath, "It is a fact that my husband, the defendant, by his course of conduct toward me existing and persisted in for a period of more than one year preceding the commencement of my action violated the provisions of section 5738, Revised Codes of Montana, 1935."

In Capps v. Capps, Mo. App., 65 S. W. (2d) 661, it was held that evidence of nagging and quarreling by the wife without specifying the character or cause of the quarrels and troubles between the parties, was insufficient to entitle the husband to a divorce.

Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350, 351, holds that, "the court must be informed what the respondent has done; not what witnesses may conclude, or what they may regard as the character of his conduct [citing cases]. General expressions 'are of no value unless accompanied by the actual facts on which these assertions are based. We are entitled, in the consideration of the case, to have the particulars as to the words spoken or the things done that constituted the cause of action alleged.'" To same effect see Finn. v. Finn. Tex. Civ. App., 185 S. W. (2d) 579; Kolopen v. Kolopen, 148 Pa. Super. 311, 25 A. (2d) 569.

Plaintiff's so-called cross-complaint specifies but two dates *before* the commencement of this action whereon it is claimed that defendant, by his conduct, inflicted grievous mental suffering upon plaintiff, the charges being: "That on July 12, 1944, Defendant took Plaintiff to the trunk room on the second floor of said Crenshaw Apartments and pointing to her trunk, which was stored therein, said to Plaintiff, 'Take it and get out,' and locked her out of said premises and deprived her of her personal belongings. That Plaintiff and Defendant, prior to July 12th, 1944, occupied Apartment No. 13 in said Crenshaw Apartments and on July 29th, 1944, while Plaintiff was going about her duties in said Apartment No. 13, Defendant, with force and in a cruel and ugly manner, and against Plaintiff's will, picked up Plaintiff and set her out in the hall of said apartment and told her to stay away from said Apartment house."

The foregoing incidents, both occurring in July, 1944, and but a few days before the commencement of this action, do not meet the requirements of the statute. Sec. 5738. The husband got nowhere by pointing to his wife's trunk. His wife paid no attention to the directions which he is alleged to have then given her. She did not take her trunk. She did not get out. She stood her ground, she remained in the apartment house. She continued to live under her husband's roof. Her "cross-complaint" shows that two weeks after the foregoing incident,

to-wit on July 29, 1944, she was still there "going about her duties in said Apartment No. 13" and that long after plaintiff commenced this action she claimed the apartment house as her "only home."

The acts on which plaintiff seeks to ground her suit must ▮▮▮ have occurred *before* the commencement of her action. In other words she must plead and prove that the extreme cruelty of which she complains was existing ·and persisted in *before* she filed her action. Sec. 5738, Rev. Codes. Here plaintiff in her reply has attempted to charge as misconduct acts which had not occurred when she brought her suit and which did not happen until "on or about the 15th day of September, 1944, in said Apartment Building" (being more than a month *after* the commencement of this action). At the trial and with no proper pleading on which to base it, the plaintiff testified to two acts of alleged cruelty which she represents occurred in the apartment building on November 15, 1944, and December 16, 1944, respectively (being months *after* the commencement of this action), on which latter date, according to plaintiff's testimony, the defendant took a dustpan away from her, saying "I'll beat the Jesus out of you." Such testimony can neither aid plaintiff's pleading nor her proof in the action.

The evidence is undisputed that on August 10, 1943, being one year and one day before the commencement of the action, the defendant left for Kennewick in the state of Washington where he engaged in war work while the plaintiff remained in Bozeman, Montana, managing the apartment building. There is no evidence whatever that defendant's absence from the state or that the lack of opportunity to associate with defendant during the time that he was in Kennewick, Washington, inflicted any grievous mental suffering upon the plaintiff. There is not a scintilla of evidence that there was anything in defendant's conduct toward or treatment of plaintiff from August 10, 1943, to and including July 11, 1944, that in any wise or manner inflicted any mental suffering upon plaintiff.

The two little flare-ups that are charged against defendant

212

on the 12th and 29th days of July, 1944, when he was endeavoring to assert the right given him by statute to manage his home and apartment house fall far short of establishing the infliction of grievous mental suffering upon the plaintiff by defendant by a course of conduct toward or treatment of plaintiff by defendant existing and persisted in "for more than one year immediately preceding the commencement of this action" as was charged by plaintiff.

Occasional arguments, disagreements or disturbances in the family do not meet the requirements of the statute. Obviously the infliction of grievous mental suffering upon the complaining spouse on two or more occasions during a thirty-one day period fails to meet the requirements of the statute. The conduct or treatment complained of must be shown to have been existing and persisted in for a period of one year before the commencement of the action for divorce and this means *one year* and not *thirteen days* (as alleged in the complaint), nor *thirty-one days* (as found by the trial court), nor even for 11 months and 29 days, nor for any other period of time short of "one (1) year before the commencement of the action for divorce" as prescribed by section 5738, Revised Codes.

In Faulkner v. Faulkner, 176 Md. 692, 4 A. (2d) 117, 120, the court said: "If the wife was in fear of bodily harm and injury to her health, it is strange that they can recall only three or four battles in as many years, and continue during all that time to live in the same house." In DeLisi v. DeLisi, 139 Pac. Super. 440, 12 A. (2d) 468, 470, the court observed: "The testimony as a whole shows brittle tempers, arguments and disputes, in which both parties seem to have been about equally at fault. Its general tenor, although disclosing frequent quarrels and temporary flare-ups, seems to indicate there are no insuperable obstacles in the path of this marriage."

"Married persons must submit to the ordinary consequences of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. Mere austerity of temper, petulance of manners,

rudeness of language, or even occasional sallies of passion, if they do not threaten bodily harm or impairment of health, do not as a general rule amount to cruelty. As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.'' 17 Am. Jur., ''Divorce & Separation,'' p. 179, sec. 56.

As was said in Argenbright v. Argenbright, 110 Mont. 379, 383, 101 Pac. (2d) 62, 64: ''While our statute provides that such acts as fall within the definition of extreme cruelty are grounds for divorce if they are justly and reasonably of such a nature and character as so to destroy the peace of mind and happiness of the injured party, or entirely to defeat the purpose and legitimate objects of marriage, or to render the continuance of the married relation between the parties perpetually unreasonable or intolerable to the injured party, nevertheless the burden is on the plaintiff to show that the effect of such acts creates the condition which the statute condemns, which we believe she has failed to do in this case. The evidence, weak as it is, shows little more than incompatibility, which is not a ground for divorce in Montana in the absence of a showing of the result specified in the statute.'' See also to same effect, Judson v. Anderson, Mont., 1946, 165 Pac. (2d) 198, 204.

It is urged that this court should affirm the judgment herein without reference to the merits because of the failure and neglect of counsel to properly attack, in the district court, the pleadings not authorized by statute, and the introduction of immaterial or improper evidence and because, in this court, the specifications of error fail to properly present the real issues in the case.

Such circumstances do not preclude this court from considering the case on its merits. Samuell v. Moore Mercantile Co., 62 Mont. 232, 204 Pac. 376; Miller Insurance Agency v. Home Fire Ins. etc., Co., 100 Mont. 551, 51 Pac. (2d) 628; In re Ryan's Estate, 114 Mont. 281, 134 Pac. (2d) 732; York v. James, 60 Wyo. 222, 148 Pac. (2d) 596, 600. Then, too, it must be remembered that an action for divorce is something more than a mere private controversy. In Franklin v. Franklin, 40 Mont. 348, 350, 106 Pac. 353, 354, 26 L. R. A., N. S., 490, 20 Ann. Cas. 339 (an action for divorce), this court said:

"The argument is * * * that, since the defendant interposed no defense, the court had no power to deny relief sua sponte. We are not aided in the determination of the question involved by brief or argument on behalf of defendant, and public policy, which must always be taken into account in actions of this character, is not referred to in the brief of the plaintiff.

"Upon the theory that an action for divorce is an action to adjust private rights merely, the position of counsel would be correct, * * *. But the state makes itself a party to every marriage * * * when the *status* of the parties has once been established, it is to the interest of the state that it be permanent. Upon this condition depends the home; upon the preservation of which, in turn, depends good citizenship and the permanency of a republican form of government. The state therefore favors the institution of marriage. For the same reason it is not favorable to divorces, * * *. It rests exclusively with the legislature to prescribe the grounds upon which divorces may be granted * * *. And the doctrine is generally recognized that such an action is not a mere controversy between private parties, but that the state is interested as an adverse party so far as to oppose the granting of a decree unless a case is made which comes within the rules prescribed by the statute."

The granting of a divorce is dependent upon the sovereign ██ will. The lawmaking power has determined the policy and specified the grounds on which a divorce may be grant-

ed. The parties to a marriage may not themselves dissolve it. Neither may the legislature. Const. Art. V, sec. 26. The courts alone may dissolve a marriage but courts have no inherent power to do so. Their only power to decree a divorce is derivative. Const. Art. III, sec 1. It is granted either by Constitution, Art. VIII, sec. 11, or by statute. The statute enumerates the causes for divorce. The parties to a marriage are denied any right to a divorce except for the causes provided by statute. The duty of enforcing the legislative will falls upon the courts but before they are empowered to grant a decree of divorce the complaint should show and the evidence establish at least one of the grounds enumerated in the statute. The mere fact that one party "does not want" the other and confirms the attitude by acts and consent or that both parties wish the decree and connive together to obtain it, constitutes no grounds for divorce.

The evidence herein is wholly insufficient to show the infliction by either party upon the other of such grievous mental suffering "existing and persisted in for a period of one (1) year before the commencement of the action" as constitutes a ground for divorce under section 5738, Revised Codes, and the trial court was powerless to grant the decree of divorce.

Under such facts the parties continue as husband and wife. "The husband must support himself and wife out of his property or by his labor. If he is unable to do so she must assist him as far as she is able." Sec. 5784, Rev. Codes. "The husband is the head of the family." Sec. 5783, Rev. Codes. As such head or manager the law gives to him the right to manage his property, including the apartment house in question. The husband may exercise such right and "the wife must conform thereto." Sec. 5783, Rev. Codes.

The decree is reversed and the cause remanded with directions to enter a decree dismissing the complaint, the cross-complaint and the reply with costs to be taxed against the defendant husband.

Associate Justices Choate and Metcalf, concur.

216

Mr. Justice Cheadle (dissenting in part).

While I agree that the decree of divorce was not warranted by the pleadings or proof, I think that a decree of separate maintenance was warranted, and that the cause should be remanded with directions to enter such a decree. This should include, of course, provision for periodic payments to plaintiff in such amount as the trial court deems reasonable.

Mr. Justice Angstman, dissenting.

I think the trial court's conclusion should be sustained. In reaching this conclusion, where the testimony is conflicting— in accordance with well-settled principles—I accept that most favorable to plaintiff, she being the prevailing party in the court below. The court specifically found that "Plaintiff is entitled to a divorce from the bonds of matrimony on the grounds of statutory cruelty, as prayed for in her cross-complaint." I agree with many of the elementary principles of law reiterated in the majority opinion but most of them in my opinion, are not applicable to this case.

I agree that had objection been raised thereto it would have been the duty of the court to disregard the cross-complaint that was set out in the reply, or to strike it from the files as unwarranted. But no objection was made to it. In legal effect the parties and the court considered the cross-complaint set out in the reply as an amendment to the complaint, adding a cause of action thereto but treating it as an amendment made as of the time that it was actually filed. The parties, without objection, tried the case on that theory and do not now raise any question regarding the propriety of the plaintiff's cross-complaint. The only objection now made to it is that it does not state facts sufficient to constitute a cause for divorce in that it does not allege that the cruelty existed for the required statutory period. It should be noted too that no such objection was raised in the trial court. It was not attacked by demurrer, motion, objection to evidence in its support or otherwise.

The allegations with respect to the duration of the alleged cruelty are as follows:

"That since said marriage, the Defendant has been guilty, of extreme cruelty, in that said Defendant has inflicted grievous and bodily injury, and mental suffering upon the Plaintiff by pursuing such a course of conduct toward her and such treatment of her, existing in and persisted in *for more than one year immediately preceding the commencement of this action,* which justly and reasonably is of such a nature and character as to destroy the peace of mind and happiness of the Plaintiff and to entirely defeat the proper and legitimate objects of marriage, and to render the continuance of the married relation between the Plaintiff and the Defendant perpetually unreasonable and intolerable. That in part, such conduct and treatment is as follows:

"That since said marriage *and particularly during the past five years,* Defendant has been rough, tough, overbearing, cruel, brutal, and neglectful in his treatment of the Plaintiff; that he has nagged her and found fault with her in many things she has done; that Defendant cannot write intelligibly and during their married life, Plaintiff has had to be the bookkeeper, auditor, and letter writer for the Defendant in his various transactions. During all said time, Plaintiff has tried to reason with Defendant, but when she has done so, Defendant has raged and become violent. That Defendant is cunning and in public can act like a gentleman; but in private, Defendant, in his treatment toward Plaintiff, has acted like a 'hell cat'."

These allegations are certainly sufficient to show that the alleged cruelty existed for the statutory period. It is to be noted that under our present statute, sec. 5738, Rev. Codes 1935, the cruelty need not have existed for one year *immediately preceding the commencement of the action,* but "for a period of one (1) year before the commencement of the action for divorce." Hence defendant's absence from Montana for much of the year immediately preceding the commencement of the action is immaterial. It should be noted too that under the first part of section 5738, Revised Codes, "the infliction, or threat of grievous bodily injury" is ground for divorce re-

gardless of the length of time that it continued. But the majority opinion asserts that the allegations of cruelty are too general and not sufficiently specific and that their denial does not raise issues of fact. I agree that it is better practice to be more specific in the allegations and that upon proper objection the plaintiff should have been required to set out the acts constituting cruelty in more detail. There is respectable authority holding that it is sufficient to charge cruelty in the language of the statute without pleading the evidence constituting the cruelty and that such a pleading is good as against a general demurrer. Thus in Etheridge v. Etheridge, 120 Md. 11, 87 A. 497, 498, the court said: "Abandonment and desertion, and cruelty have not been regarded by this court, or by the courts of this state, as purely and exclusively questions of law, but rather as mixed questions of law and fact to be decided at the final hearing. The pleader has never been required to set out the facts and circumstances which constitute the evidence of the causes of the divorce alleged, but the bill which charged the enumerated grounds of divorce in the language of the statute has been uniformly regarded to be sufficient."

Here there was not even a general demurrer interposed to the cross-complaint in the reply. In Mumford v. Mumford, 13 R. I. 19, the court said: "The court holds, affirming the decision in Brown v. Brown, 2 R. I. 381, that in a petition for divorce it is in general sufficient to charge the offence in the language of the statute. If greater particularity becomes necessary for the respondent's defence, the court can, by special order, provide for such particularity or specifications as to time and place as the case requires, but this is a matter resting in the discretion of the judge. Ordinarily, if either party is surprised by unexpected evidence, justice can be done by giving time or by a continuance."

In Dakin v. Dakin, 1 Neb. Unof. 457, 95 N. W. 781, the same question was under consideration under very similar facts. The court in holding the pleading sufficient said: "The charge of cruelty set out in the cross-bill of the defendant is

in the most general terms, the only specific acts constituting the same being that the plaintiff allowed his mother to strike the defendant and to call her obscene and abusive names. Fairness to the attorney for appellant who appears for him in this court requires us to state that he had nothing to do with the trial of the case below. In this court the objection is made that the cross-petition does not state a cause of action. ·He insists that it contains nothing more than legal conclusions, unsupported by any statement of facts from which the court ·can determine whether the charge would constitute legal cruelty sufficient to entitle the defendant to a divorce. Many authorities are cited in support of this contention, and we have no doubt that, if objection to the cross-petition had been timely made, it would have been held too general in its statements, but not absolutely insufficient. The plaintiff made no objection to the cross-bill of the defendant in the district court; he neither demurred, nor asked for a more specific statement. He made no objection to the introduction of evidence by the defendant in support of her cross-bill, and we think it is now too late to insist here on objections that were not raised or presented to the court below. The plaintiff allowed the trial to proceed upon the theory that the defendant's cross-bill was sufficient, and it would be unfair both to the defendant, and to the court who tried the cause below, to allow the plaintiff to take any benefit from the generality of the statements of a pleading which he has treated as good and sufficient up to this time."

In Seibel v. Seibel, 30 Ohio App. 198, 164 N. E. 648, the court said: "The statute provides as a ground for divorce extreme cruelty and gross neglect of duty. * * * These statutory grounds are alleged. Facts constituting these grounds would be evidence in the case. It is argued that the grounds stated in the petition are only allegations of law and not of facts." After referring to another case involving a similar point the court continued as follows: "Applying this rule to the instant case, we have the statutory ground for divorce alleged. The allega-

tions put in issue the facts whether the defendant was guilty of gross neglect of duty or extreme cruelty. Whether or not the court, on motion, should have required the plaintiff to make the petition definite and certain, is not now before us.''

In McCullough v. McCullough, 120 Tex. 209, 36 S. W. (2d) 459, 462, the court had this to say: ''In our opinion the petition for divorce filed in the district court by the appellee was sufficient as against a general demurrer. It states matters showing the jurisdiction of the district court of Hardeman county, Tex., under article 4631, R. C. S. of Texas 1925. Also the petition alleges the statutory ground for divorce under subdivision 1 of article 4629, R. C. S. of Texas 1925. In this connection we hold that a divorce granted by a court of competent jurisdiction on a petition which merely alleges the defendant has been guilty of such excesses, cruel treatment, and outrages against the plaintiff of such a nature as to render their further living together insupportable, is good against a general demurrer. Of course such an allegation, in a way, is the pleading of a conclusion when tested by proper special exception, but, when tested by a general exception, it is a sufficient allegation of a fact, to authorize the district court to hear the evidence, and on which a valid decree of divorce may be awarded.''

To the same general effect is Renfro v. Renfro, Tex. Civ. App., 80 S. W. (2d) 348, and Conant v. Conant, 10 Cal. 249, 70 Am. Dec. 717.

If defendant desired a more definite statement of time and place of the cruelty relied upon he should have raised the point in appropriate manner. If he was unable to meet the charges because they were too indefinite as to time, place and circumstances, he is the one to raise that objection. Neither this court nor the lower court is obligated to raise the point of its own motion.

The only reasonable inference that can be drawn is that defendant well knew the time, place and circumstances of the cruelty relied upon by plaintiff and did not desire a more

definite statement thereof. He does not now contend that they were too general to enable him to prepare his defense.

Hence it is my opinion that the cross-complaint set out in the reply stated facts sufficient to constitute a cause of action for divorce, particularly where, as here, its sufficiency is questioned for the first time in this court. I think it is sufficient under either of two theories. First, it charges the infliction of grievous bodily injury and the threat of grievous bodily injury within the first part of section 5738, Revised Codes, and that form of cruelty need not have existed for a year in order to constitute grounds for a divorce. As to those acts of cruelty the complaint is specific as to time, place and circumstances. Any further details would render the complaint subject to attack for pleading the evidence. This court has held that acts such as those here constitute cruelty in Albert v. Albert, 5 Mont. 577, 6 Pac. 23, 51 Am. Rep. 86, where it said: "We think one beating or whipping of a wife by her husband sufficient to establish the charge of extreme cruelty. Such an act could not be accidental or by mistake, and if not, the probabilities would be that it might be repeated again and again, subjecting the wife to constant fear and rendering her life miserable. It is extremely cruel for a husband to beat or whip his wife even once. Mere words can never afford any provocation or excuse for such an act. No words can justify an assault. A husband is not authorized to whip his wife because she calls him hard names, nor can he graduate the force of his chastisement by the vigor of the language used. A husband may not raise his hand against his wife, except in absolute defense of his life, or to prevent his receiving great bodily harm, and then he can only use force sufficient to protect himself from the danger."

After the decision in the Albert case the statute was amended so that before the infliction of bodily injury would be cause for divorce it must also be "dangerous to life." Because of the change in the statute, this court by a divided opinion in Ryan v. Ryan, 33 Mont. 406, 84 Pac. 494, held that whether one vio-

lent blow would be sufficient to produce injury dangerous to life would be for the trier of the facts and repudiated the rule of the Albert case. It held that the complaint, in failing to allege that the acts produced bodily injury dangerous to life did not state a cause of action. The decision in the Ryan case was made in 1905. In 1907 the legislature amended the statute to read as it now is where all that is necessary is the infliction or threat of grievous bodily injury to constitute cruelty sufficient for a divorce. The effect of the 1907 amendment was to do away with the necessity in a divorce action of alleging or proving that the cruelty was dangerous to life. .

Secondly, the cross-complaint charges the infliction of mental suffering by a course of conduct existing and persisted in for one year before the commencement of the action so as to meet the requirements of the last clause in section 5738, Revised Codes. Was the proof sufficient to sustain the allegations? · I think it was. Plaintiff testified:

"Q. Mrs. Crenshaw, in your case for divorce you allege that the defendant has inflicted grievous bodily injury and mental suffering upon the palintiff by pursuing such a course of conduct toward her and such treatment of her, existing and persisted in for a period of more than one year immediately preceding the commencement of this action which justly and reasonably is of such a nature and character to destroy the peace of mind and happiness of the plaintiff and to entirely defeat the proper and legitimate objects of marriage and to render the continuance of the marriage relation between the plaintiff and the defendant perpetually unreasonable and intolerable. Is that a fact? A. Yes.

"Q. Will you enumerate to the Court in part what acts the defendant has been guilty of during the past year, past several years, which have a bearing upon this condition? A. Well, the first and worst example, I think of, was the time that he went to Kennewick. He left me with the apartment house to run, and not one person to help me. I had the yard and the stoker and the maid's work and the management,—everything

that was done, I did it. Then last year he locked me out of the apartment,—put me out of the apartment,—

"Q. That was in July, was it not? A. Yes, July 12th,—without any clothes, except what I had on my back. And several times when he would find me near the door, or looked as if I wanted to go in, he took hold of me, shoved me across the hall, and once he dragged me up the stairs.

"Q. Dragged you upstairs how many steps? How many flights? How much? A. Well, there are six steps to the landing, and I think there are ten or twelve steps to the next; be the six steps to the landing, and about seven or eight of the other steps. * * *

"Q. (By Mr. Peterson) During the past year has Mr. Crenshaw in his conduct toward you been rough, tough and overbearing? A. Yes.

"Mr. Bunker: Of course that is leading, but go ahead.

"Q. (By Mr. Peterson) Just speak up. A. Yes, it has.

"Q. And when he knocked you down and dragged you up those steps did it leave you any bruises, leave any bruises on you? A. Yes.

"Q. Any black and blue bruises? A. Yes, I had several on my arms, and I thought my spine was broken, injured, but it did get better.

"Q. And did that cause you to feel chagrin and to become nervous and ill?

"Mr. Bunker: Now,—A. Yes. * * *

"Q. (By Mr. Peterson) If his physical contact and combat which you complained of coming from this husband of yours and which you state was inflicted upon your body and mind, how has that affected your body and mind? A. I think that it had a great bearing on my digestive system, so that it is in the condition that it is today.

"Q. Has it caused you to become sick and irritated? A. Yes."

Had objection been made to the first question it perhaps should have been sustained. But no objection was made to it

and neither did defendant on cross-examination attempt to develop or elicit the time when the acts complained of were committed or of what they consisted. I think in the absence of any objection this is some proof of the ultimate fact that defendant had inflicted mental suffering upon plaintiff by a course of conduct persisted in for more than one year to meet the requirement of the last paragraph of section 5738, Revised Codes.

Certainly the proof of the specific acts of cruelty was sufficient to meet the first part of the statute. I concede that the husband under the law is the head of the family (and no one is questioning that proposition here) but that does not justify him in knocking his wife down and inflicting black and blue marks on her arms and otherwise intentionally injuring her physically or in threatening to "knock the Jesus out of her."

What was said by this court in Poague v. Poague, 87 Mont. 433, 288 Pac. 454, 455, is applicable here. It was there said: "There is substantial evidence supporting all of the court's findings. Upon this state of facts we are not permitted to disturb the judgment being governed by the oft-repeated rule that this court will not overturn the findings of the trial court unless there is a decided preponderance of evidence against them; when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed." To the same effect is Williams v. Williams, 85 Mont. 446, 278 Pac. 1009.

I think the decree awarding to plaintiff a divorce should be affirmed. I concede too that the state has an interest in every marriage and I agree with what this court had to say in Franklin v. Franklin, 40 Mont. 348, 106 Pac. 353, 26 L. R. A., N. S.., 490, 20 Ann. Cas. 339, quoted from in the majority opinion. Neither do I contend that this court is precluded from considering this case on its merits. But, in my opinion, a case was made out here to come within the rules prescribed by statute for the granting of a divorce.

It is evident to me from the record in this case that the state

of Montana, acting through this court, will assume a monstrous undertaking if it endeavors to restore peace, harmony and tranquility in the Crenshaw home and hold these parties together as husband and wife. I do not believe that the public policy of this state as expressed by section 5738 is such that a wife must continue to endure the physical attacks shown to have been made upon plaintiff in this case by her husband without being entitled to a divorce. Also, the state will likely not accomplish its purpose in this case of making the marriage permanent. The natural thing to expect is that plaintiff will immediately institute another action for divorce and, upon the identical evidence here introduced, this court will have to hold that she is entitled to a divorce because both the desertion. and the course of conduct amounting to cruelty under the last part of section 5738, Revised Codes, will have continued for more than one year.

I also think the award of alimony was proper and should be sustained. The court followed carefully the procedure which was held proper in Lewis v. Lewis, 109 Mont. 42, 94 Pac. (2d) 211, in providing security for the award of $125 per month alimony. The amount of the award is reasonable and it is of no consequence whether plaintiff contributed anything to the purchase of the Crenshaw Apartments or not. The fact stands undisputed that she managed the apartment house property for months at a time when defendant was absent from the state and did much of the work when he was within the state. Most of the money that went toward the payment of the purchase price of the apartment came from earnings from the apartment. Plaintiff as the court found, ''has applied herself diligently to the care and management of said apartment house.''

The award of $125 per month is but fair and just to plaintiff.

One other point must be mentioned. Were I able to agree with the majority opinion so far as it deals with questions of law, I still would disagree with the ultimate conclusion that the action should be dismissed. If plaintiff is not entitled to a

divorce, certainly she is entitled to separate maintenance. The court found and there is plenty of evidence to.sustain the finding that defendant deserted plaintiff on July 12, 1944. As a ground for separate maintenance desertion need not exist for any period of time. Secs. 5736, 5739 and 5769, Rev. Codes; Decker v. Decker, 56 Mont. 338, 185 Pac. 168.

Clearly the record shows plaintiff is entitled to a decree of separate maintenance, and the award of $125 per month is warranted whether plaintiff be given a decree of separate maintenance or a decree of divorce.

Rehearing denied June 24, 1947.